Argued and submitted December 15, 1999, affirmed December 27, 2000

In the Matter of
Amy Dompeling, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF KLAMATH COUNTY,
*Respondent,*

*v.*

Amy DOMPELING,
*Appellant.*

(9800750JV; CA A105207)

17 P3d 535

George W. Kelly argued the cause and filed the brief for appellant.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Armstrong, J., dissenting.

**KISTLER, J.**

The trial court found that youth was within its jurisdiction because she committed acts that would constitute the crime of menacing if she were an adult. On appeal, youth argues that the evidence does not establish that she intended to put her mother in fear of imminent injury. We review *de novo* and affirm.

Youth lived with her mother. One evening, youth got "very upset" because her mother had unplugged the telephone to keep youth from using it. When asked what occurred that evening, mother testified:

> "Well, she came into the bathroom and said that she wanted to use the phone. And when I said no, she got more angry, and more angry, and she finally just came in and said, 'I wish you were dead, I um, I could stab you right now.' And then she came back a minute later, and said, 'I thought about doing it while you were in your sleep.' "

Mother explained the reason for youth's threats:

> "I've always let [youth] get her way, [but] I've c[o]me down real hard on [youth] in the last few months, because she's totally out of control and she's not used to it and when she doesn't get her way, she blows. And she's very violent, very angry, she slams, she bangs and she, I did not give in, and she was very, very angry with me."

Based on this evidence, the trial court found that youth had committed acts that would constitute menacing if she were an adult; that is, the trial court found that "by word or conduct [youth] intentionally attempt[ed] to place [mother] in fear of imminent serious physical injury." ORS 163.190 (defining the crime of menacing).[1]

---

[1] The dissent "take[s] issue with [our] statement of facts." 171 Or App at 696. It reasons that, in quoting mother's testimony, we have "ignore[d] the fact that there is no evidence that youth had ever assaulted or harmed mother or that she had a reputation or character of acting violently toward people." *Id*. As the dissent implicitly acknowledges, the record does not disclose one way or the other whether youth had been violent towards mother or anyone else in the past. The dissent thus appears to take the position that the absence of evidence in the record somehow contradicts mother's testimony that when youth does not get her way, "she's very violent, very angry, she slams, she bangs." It may be that the dissent believes that additional evidence of youth's violent behavior would be persuasive, but mother's testimony is uncontradicted.

On appeal, youth "readily admits that stabbing is a serious physical injury, and her intentions can be inferred"; that is, youth does not dispute that we can infer that she intentionally attempted to place her mother in fear of serious physical injury.[2] The only question, according to youth, is "whether her words carried a threat of 'imminent' injury." Youth reasons that she did not threaten to stab her mother immediately. Rather, youth argues that she only "threatened to get a weapon and return, some hours later, and attack her mother after the mother had gone to bed." Youth concludes that because "the threatened harm was not imminent," the state failed to prove its case.

██    Youth's argument turns on what the statutory term "imminent" means. We look initially to the common understanding of the word. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Imminent is defined as:

> "ready to take place: near at hand: impending ‹ our ~ departure›; *usu* : hanging threateningly over one's head: menacingly near ‹ in ~ jeopardy› ‹this ~ danger›."

*Webster's Third New Int'l Dictionary*, 1130 (unabridged ed 1993) (capitalization omitted). Understood in its usual sense, the word does not require that the state prove a threat of immediate injury. It is sufficient if the threatened injury is "near at hand," "impending," or "menacingly near." Nothing in the remainder of the statute suggests that the word is not used in its usual sense, and youth does not argue that the constitution requires a more restrictive interpretation. *See State v. Garcias*, 296 Or 688, 698, 679 P2d 1354 (1984).

Applying the statutory definition, we find that youth attempted to put her mother in fear of imminent serious physical injury. Youth made two statements to her mother. She stated initially, "I could stab you right now." Youth does not dispute that she intended to place her mother in fear of serious physical harm, and her use of the words "right now"

---

[2] We accept youth's concession. Stabbing is a serious physical injury. We also agree, on *de novo* review, that youth intended to put her mother in fear of being stabbed. Mother's testimony that youth was "very, very angry" and that she would become "very violent, very angry" and slam things convinces us that youth's words were in fact intended to put mother in fear that youth would carry out her threats.

makes the threatened injury imminent. The fact that youth did not have a knife in her hand when she made that statement does not cause us to reach a different conclusion. Youth's second statement also threatened imminent injury. It was approximately eight o'clock in the evening when youth told her mother that she could stab her in her sleep. The threat of being stabbed within the next few hours is sufficiently near at hand to be imminent. The trial court correctly held that youth attempted to put her mother in fear of imminent serious physical injury.[3]

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes on *de novo* review that youth committed an act that, if committed by an adult, would constitute the crime of menacing. Because I conclude that youth's speech, although troubling, cannot reasonably be construed as threatening and that, even if threatening, the potential harm to which her speech alluded was not imminent, I would reverse the juvenile court's assumption of jurisdiction. Accordingly, I respectfully dissent.

As a preliminary matter, I take issue with the majority's statement of facts. The majority accepts at face value

---

[3] The dissent would reverse the trial court on the basis of issues that youth has not raised. The dissent reasons that the statute cannot constitutionally be applied to youth's statements. 171 Or App at 699-700, 701-02. The Oregon Supreme Court has already held that the menacing statute is facially constitutional. *See State v. Garcias*, 296 Or at 697 & n 8. Youth, at most, is left with an as-applied challenge, but youth has not asked us to hold that the statute is unconstitutional as applied to her. Indeed, she has raised no constitutional challenge on appeal. The issue that the dissent would reach is not properly before us. *See State v. Wyatt*, 331 Or 335, 15 P3d 22 (2000); *Garcias*, 296 Or at 698 n 9.

Building on its constitutional analysis, the dissent reasons that youth's statements were not threats. 171 Or App at 696 (Armstrong, J., dissenting *passim*). It is worth noting that the statute does not prohibit threats as such, although evidence of threatened injury may be relevant to proving that a person has "attempted to place another person in fear of imminent serious physical injury." *See* ORS 163.190. In any event, youth has not argued on appeal that her statements were not threats nor has she argued that they were not intended to put her mother in fear of serious physical harm. Finally, the dissent's conclusion that youth's statements were not threats "cannot be separated," to use the dissent's words, from its constitutional analysis. 171 Or App at 698. We imply no agreement with the dissent's reasoning when we say that the constitutional issue upon which the dissent's conclusion depends is not properly before us.

mother's conclusory statement that youth is "very violent." However, in crediting mother's portrayal of youth as "violent," the majority ignores the fact that there is no evidence that youth had ever assaulted or harmed mother or that she had a reputation or character of acting violently toward people. By accepting mother's characterization of youth as violent, the majority artificially inflates the gravity of the context in which youth's statements were made. Although mother may have been genuinely intimidated by her daughter's temper tantrums,[1] mother's subjective feelings about youth's behavior cannot alter the objective character of that behavior, nor may they form the basis of the court's assumption of jurisdiction. *See State v. Anderson*, 56 Or App 12, 15, 641 P2d 40 (1982) (noting that subjective fear on the part of the victim is not an element of the crime of menacing). The majority errs in implying otherwise.

The majority also errs in focusing solely on youth's argument that the contemplated harm was not imminent. The majority's myopic focus on the question of imminence inappropriately dispenses with some of youth's arguments below and on appeal and fails to live up to our obligation to apply the menacing statute correctly. As a consequence, the majority fails to consider whether the challenged statements were in fact threats and therefore punishable under the menacing statute. Although youth's argument that she did not engage in conduct that would violate the menacing statute is based, in large part, on the fact that the contemplated harm was not imminent, we are nonetheless required on *de novo* review to address the broader question whether youth's conduct satisfied the other requirements of the menacing statute. If youth incorrectly assumes that her conduct satisfied one requirement of the statute when, in fact, it did not, we are not bound by youth's misconstruction of the statute. *See, e.g., Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

Moreover, the majority's contention that we must interpret the menacing statute, as applied to this case, without reference to the state and federal constitutional free

---

[1] The fact that mother waited two months to report the behavior at issue suggests that even her subjective reactions to youth's outbursts were not as strong as she contends.

speech guarantees is error. It is well settled that "[s]tatutes punishing threats 'must be interpreted with the commands of the [constitutional guarantees of free speech] clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech.' " *Lovell v. Poway Unified School Dist.*, 90 F3d 367, 371-72 (9th Cir), *cert dismissed* 518 US 1048, 117 S Ct 27, 135 L Ed 2d 1120 (1996) (quoting *Watts v. United States*, 394 US 705, 707, 89 S Ct 1399, 22 L Ed 2d 664 (1969)). In fact, constitutional analysis is so prevalent in the case law interpreting ORS 163.190 and other statutes proscribing speech that it would be impossible to apply ORS 163.190 to the facts of this case without relying to some degree on the constitutional analysis in our previous cases. *See, e.g., State v. Garcias*, 296 Or 688, 695-700, 679 P2d 1354 (1984) (construing the menacing statute in light of constitutional requirements elucidated in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982)); *Wayt v. Goff*, 153 Or App 347, 352-53, 956 P2d 1063 (1998) (stating that, in the context of criminal and civil stalking statutes, contacts involving expression must always be analyzed more stringently than contacts that do not involve expression in order to avoid violating Article I, section 8, of the Oregon Constitution). As I further explain below, given the constitutional limitations on the state's ability to punish speech, the majority errs in not addressing whether youth's speech can properly be construed as threatening.

Because the question whether youth's speech constituted a threat under ORS 163.190 cannot be separated from the question whether her speech was of a type that may be constitutionally proscribed, I address the two issues together.[2] ORS 163.190(1) provides that a "person commits

[2] The majority contends that my focus on the constitutional limits that bear on ORS 163.190 means that I treat the case as presenting an as-applied challenge to the court's decision to assume jurisdiction over youth for violating the statute, which is not a challenge that youth has made. The majority misunderstands my point. We are obliged to apply the statute correctly in this case, *see Stull*, 326 Or at 77, which means that we must be sensitive to the constitutional constraints that bear on the permissible reach of the statute when we do that. The constitution informs my understanding that the statute does not reach the conduct at issue in this case. Because I do not conclude that youth's conduct violates the statute, I do not consider the case to be one that presents an as-applied challenge under Article 8, section 8.

The majority also questions my discussion of the constitutional principles that bear on the proscription of threats, because the menacing statute "does not prohibit

the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." In *Anderson*, we explained that the operative issue under ORS 163.190(1) is whether "a reasonable person [in the victim's position] would have been placed in the requisite state of fear." 56 Or App at 15 (citations omitted). In *State v. Moyle*, 299 Or 691, 704 P2d 740 (1985), the Supreme Court further elaborated, in construing the criminal harassment statute, that, in order for a statute proscribing verbal threats to survive scrutiny under Article I, section 8, of the Oregon Constitution, "the danger that the message will be followed by action must be found from the evidence to be objectively probable from the perspective of the factfinder, not only subjectively from the perspective of the addressee."

Based on the foregoing principles, I would conclude that youth's statements are insufficient as a matter of law to meet the requirements of ORS 163.190. In this case, youth stated that she "wished" her mother were dead and that she "could stab [her] right now." A little later she acknowledged that she had considered stabbing her mother in her sleep. Neither statement is a threat, and neither statement evidences an attempt to place mother in fear of serious physical injury. *See Garcias*, 296 Or at 698.

The first alleged threat, that youth could stab mother right now, was uttered in the conditional tense and followed an expression of sentiment (that youth wished mother were dead). Such a conditional statement is too equivocal to constitute an attempt to place someone in fear of serious physical injury. Indeed, if it were such an attempt, it was a very poor one. Given that all we have to go on in evaluating whether youth had the requisite intent is the objective nature of the statement, I would conclude that the statement was not such an attempt.

Moreover, the statement cannot be construed as a threat because it lacks the gravity of purpose, unambiguousness and immediacy that is necessary to remove a purported

threats as such." 171 Or App at 696 n 3. Although the menacing statute does not use the word "threat," to the extent that it is a statute that is addressed to communication, *see Garcias*, 296 Or at 696-700, the communication that it addresses *is* communication that constitutes a threat.

threat from the realm of constitutional protection. *See State v. Chung*, 862 P2d 1063, 1072-73 (Haw 1993). Rather than affirmatively stating that an assault will happen, as is required for a threat, youth's statement merely indicates that an assault is within the realm of theoretical possibility. *See State v. Hall*, 327 Or 568, 573, 966 P2d 208 (1998) (quoting dictionary definition of "threat" as an "expression of an intention" for purposes of construing the robbery statute, ORS 164.395). In fact, the utterance at issue is not phrased as a statement of intent at all, but rather as an expression of loathing that was apparently intended as a hurtful response to mother's refusal to allow youth to use the phone. *See State v. Tuilaepa*, 4 Cal 4th 569, 842 P2d 1142, 1154, 15 Cal Rptr 4th 382 (1992), *aff'd* 512 US 967, 114 S Ct 2630, 129 L Ed 2d 750 (1994) (noting that a defendant's threat to "burn" a California Youth Authority employee was meant only as an angry retort rather than as a true threat). Because the utterance was not a statement of intent, it would be impossible for a reasonable factfinder to conclude that "the danger that the message [would] be followed by action" was "objectively probable." *Moyle*, 299 Or at 704. Youth's statement was not merely an empty threat; it was not a threat at all.[3]

Even assuming that youth's first statement was a threat, it still would not be proscribable in light of the requirement that it be objectively probable that the threat will be carried out, because the context of youth and mother's relationship indicated that youth would not act on her violent feelings. *See Lovell*, 90 F3d at 372 (discussing the importance of context in determining the likelihood that threats will be carried out and the extent to which they are therefore proscribable); *Roy v. United States*, 416 F2d 874, 878 (9th Cir 1969) (same).

Because I conclude that youth's first statement was not a statement of intent to cause harm and therefore was not a threat or an attempt to place mother in the requisite state

---

[3] The only reasonable construction that can be given youth's statement is that she said that she hates her mother enough that she could kill her right then. That statement is understandably one that would trouble a mother to hear. Nevertheless, it is not a statement that youth is *going* to kill her mother at that moment, which is what youth would have had to have said to violate the menacing statute.

of fear, I would hold that the first statement cannot support the court's finding of jurisdiction under ORS 163.190.

I turn to youth's second statement. After uttering the statement about the stabbing, the youth left the bathroom and then returned a minute later and reported that she had "thought about doing it while you were in your sleep." That statement could be interpreted as a general expression of youth's past feelings about mother, in which case it could not possibly be understood as a threat[4] or as an attempt to place mother in the requisite state of fear. On the other hand, it could be interpreted as an expression of youth's immediately previous musings, which interpretation would admittedly give the statement a more malevolent tenor. However, even assuming that the second interpretation is the correct one, the statement cannot be reasonably understood as a threat or as an attempt to place mother in the requisite state of fear. The statement was merely an expression of youth's feelings, rather than of intent or purpose. *See Hall,* 327 Or at 573; *Garcias,* 296 Or at 698. Thus, it could not have led a reasonable person to believe that a physical assault was objectively probable. *Moyle,* 299 Or at 704.

Even if I were to reach the untenable conclusion that the statement was a veiled declaration of intent, the statement would nonetheless lack the unambiguousness, immediacy, and gravity of purpose necessary to remove it from the free speech protections of the state and federal constitutions. *See Chung,* 862 P2d at 1072-73. The statement lacks immediacy because it does not refer to a time period in the near future or indicate that an assault will occur in the immediate future. For similar reasons, the statement is ambiguous. It fails to indicate whether the thoughts are still being entertained or whether they have been rejected as a possible

---

[1] A threat would necessarily have a future reference point. *See Hall,* 327 Or at 573; *Webster's Third New Int'l Dictionary,* 2382 (unabridged ed 1993) (defining "threat" and "threaten"). Although it may be possible to infer that someone who has thought in the past about harming a particular person might be more likely to do so than someone else, one cannot be convicted of the crime of menacing simply by expressing past thoughts without linking them in some way to proposed future conduct. A "threat" that is inferred from an expression of past feelings necessarily lacks the required unambiguousness, immediacy, and imminence to sustain a conviction under ORS 163.190.

course of action. Finally, the indefiniteness of the statement precludes a conclusion that it signifies a gravity of purpose; the statement that one has "thought about" doing something logically suggests that the individual has not settled on that course of action, and until a person settles on a course of action, she necessarily lacks the purpose to do it. In fact, a statement that one has "thought about" something is often taken to imply that the person has considered a certain course of action and rejected it.

As was the case with the first statement, the context of the second statement does not convert it into a proscribable threat. *See Lovell*, 90 F3d at 372; *Roy*, 416 F2d at 878. Because youth did not have a history of physically harming people, her expressions of her feelings do not take on a more ominous countenance than the ordinary meanings of her words imply. Moreover, taking the two statements as context for each other does not increase their seriousness because neither of them has any of the required elements: unambiguousness, gravity of purpose, and immediacy. The majority errs in failing to address whether youth's statements meet the requirements of ORS 163.190 other than imminence.

Finally, I disagree with the majority's conclusion that either of youth's statements, even if threatening, apprised mother of imminent danger, as required by ORS 163.190. The conditional nature of youth's first statement indicates that the utterance, even if a threat, did not satisfy the imminence requirement of ORS 163.190. Because the statement was made in the conditional tense, and thus merely indicated the theoretical possibility of an assault, it was necessarily too indefinite to convey the idea that such an assault was immediately forthcoming or impending. *See Webster's Third New Int'l Dictionary*, 1130, 1132 (unabridged ed 1993) (defining "imminent" as "ready to take place: near at hand: impending" and defining "impend" as "to threaten from near at hand or as in the immediate future"). The majority errs in relying on youth's use of the words "right now" to conclude otherwise. Because the statement expressed a possibility rather than a purported certainty or even a probability, the words "right now" add no substance to the indefinite statement.

Similarly, the second statement cannot be construed as indicative of "imminent" danger because it cannot be read to signify that such danger was near at hand or forthcoming in the immediate future; in fact, the second statement has no specific future reference point. Even accepting the majority's conclusion that an assault that evening while the mother slept would have been imminent, the statement does not indicate that the proposed harm is any more likely to occur that evening than any other day or evening. Phrased as a description of youth's past state of mind and lacking any reference to the future, the statement merely indicates that thoughts about hurting mother have crossed youth's mind at some point in the past. The majority errs in reading into the statement a reference to that very evening.

Because I would conclude that youth's statements do not meet the requirements of ORS 163.190, I would reverse the juvenile court's finding of jurisdiction. Accordingly, I respectfully dissent.