Argued and submitted April 30, judgment on Counts 1, 3, and 4 reversed, otherwise affirmed December 2, 2015

In the Matter of C. S.,
a Child.

STATE OF OREGON,
*Respondent,*

*v.*

C. S.,
*Appellant.*

Lake County Circuit Courtd
120011JV;
Petition Number 120011B;
A154245

365 P3d 535

Caitlin Mitchell argued the cause and filed the brief for appellant.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Youth was found within the juvenile court's jurisdiction for committing acts that, if committed by an adult, would constitute three counts of menacing, ORS 163.190.[1] On appeal, youth argues that the evidence was legally insufficient to show that his words and conduct would have caused fear of "imminent serious physical injury" in an objectively reasonable person. For the reasons that follow, we agree and, therefore, reverse.[2]

This case arose out of a series of statements made by youth, a 12-year-old middle school student, to three of his classmates, JH (age 12), MS (age 12), and MH (age 13). Approximately three or four times per week, during social studies class and in the school's hallways, youth told these classmates that they were "going to die" in various ways and that he would kill them. Youth frequently spoke of using voodoo dolls, drugs, and black magic to harm the students. He drew a star-shaped "death chart" that listed the classmates' names and described how each of them was going to die, and told them that he could create "an opening to hell" by mixing his blood, a rose, and salt. This conduct continued over a period of approximately three weeks.

JH testified that youth told her that she was going to "burn to death when [she] was 18. Then he brought it down to when [she] was 16, then to 13, and then into three days. He said if [she] didn't die, *** he was going to stab [her] with a pencil until [she] died." JH also explained that, on one occasion, she saw youth at Safeway and that youth had followed her around the store, repeating her name; as soon as JH reunited with her mother, youth walked away. MH testified that one day, in class, youth told her "that his

---

[1] ORS 163.190 provides:

"(1) A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury.

"(2) Menacing is a Class A misdemeanor."

[2] Youth was originally alleged to have committed four counts of menacing. At the jurisdictional hearing, the juvenile court dismissed Count 2 without objection from the state. Although we reverse as to the remaining counts, we do not disturb the part of the court's judgment that dismissed Count 2.

older brother likes little girls and \*\*\* that he's in prison for it right now, and \*\*\* he was going to rape [her]." When asked if youth described how he might try to kill her, MH testified that youth "would use things like—examples like shooting, or stabbing, or burning." All three classmates testified that youth would draw his finger across his throat as he walked past them in the hallways, and MH also testified that youth would say "die" as he did so.

At the conclusion of the state's case, the juvenile court expressed doubt as to whether the evidence met the "imminence" requirement set out in ORS 163.190(1). That statute provides, "A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of *imminent* serious physical injury." (Emphasis added.) Specifically, the court stated:

> "How do you address the issue—I mean everything he says is kind of in the future, as far as [JH] is concerned. \*\*\* She's the only one you asked about imminency. And it was from two weeks \*\*\* and finally got down to three days. I mean can you point to any testimony that makes it imminent? I mean I'm really concerned about this. I think his actions are just really off-base; but whether or not they constitute a crime as an adult is what we are here to try; and I'm not sure they do."

In response, the state argued that youth's frequent threats and the shrinking time frame in which the threatened harm to JH would occur indicated to youth's classmates that "they could be \*\*\* a victim of stabbing at any particular time" and that, as a result, "they were in fear of what he could do, immediately, because they couldn't—they couldn't figure out what he would do." The state also argued that, by following JH around in the grocery store, youth's actions "indicate[d] he want[ed] to do something now."

Ultimately, the court was persuaded that youth's statements, combined with his gestures, intentionally attempted to place his classmates in fear of imminent serious physical injury:

> "I think the damning factor that makes it imminent is the drawing of his finger across his throat, indicating, 'I am going to cut your throat,' which is the only indication, and

the only thing he could mean is 'I'm going to do that.' So it's—the fear of imminent physical injury is more by act tha[n] by words in this particular case. The words—put it in the girl's mind, and then the action of drawing the finger across the throat, I think the only purpose is to put them in fear of imminent injury."

Thus, the court found youth within its jurisdiction for committing acts that would constitute menacing if he were an adult.

We review the juvenile court's legal conclusions for legal error, but we are bound by the court's findings of historical fact so long as there is any evidence to support them. *State v. S. T. S.*, 236 Or App 646, 655, 238 P3d 53 (2010). Where the juvenile court did not make findings on "disputed issues of fact and there is evidence from which those facts could be decided more than one way," we presume that they were decided in a manner consistent with the court's ultimate conclusion. *Id.*

By its terms, the menacing statute prohibits "word or conduct" that is intended to place others in fear of "imminent" serious physical injury. Because the victim's subjective state of mind is not a defined element of the offense, the standard is whether a "reasonable person" would have been placed in the requisite state of fear. *State v. Anderson*, 56 Or App 12, 15, 641 P2d 40 (1982); *see also* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 95, 96 (July 1970) ("'Physical menace' implies such conduct as would cause fear to a reasonable man. The standard to be applied is an objective one. Obviously empty threats to inflict serious injury are not so harmful as to deserve criminal sanction.").[3]

On appeal, youth argues that, viewed in context, his conduct would not have caused a reasonable person to fear that serious harm was imminent. Specifically, youth contends that the juvenile court erred in concluding that his gesture of drawing a finger across his throat satisfied the imminence requirement in ORS 163.190. The state responds that the nature and frequency of youth's threats would

---

[3] Although the individuals involved in this case were juveniles, neither party suggests a different application of the "reasonable person" standard that we have traditionally applied in the menacing context.

suggest to a reasonable person that they were serious, and that, taken together with youth's statements "shortening * * * the timeframe in which death may occur," a reasonable person would also consider the threat of harm to be imminent.

We previously construed the meaning of the statutory term "imminent" in *State ex rel Juv. Dept. v. Dompeling*, 171 Or App 692, 17 P3d 535 (2000). In *Dompeling*, the youth was upset with her mother for unplugging the telephone to prevent her from using it. After becoming increasingly angry, the youth told her mother, "I wish you were dead, I um, I could stab you right now," and a minute later, "I thought about doing it while you were in your sleep." *Id.* at 694. Based on those statements, the youth was found within the jurisdiction of the court for committing acts that would constitute menacing if she were an adult. On appeal, the youth did not dispute that she intentionally attempted to place her mother in fear of serious physical injury (*i.e.*, stabbing). Her sole argument was that any threat was not "imminent," reasoning that "she did not threaten to stab her mother immediately," but rather, "threatened to get a weapon and return, some hours later, and attack her mother after [she] had gone to bed." *Id.* at 695.

We disagreed, concluding that the trial court correctly held that the youth attempted to put her mother in fear of "imminent" serious physical injury. Looking to the dictionary definition of "imminent," we determined that, as used in ORS 163.190, an imminent injury is one that is "near at hand," "impending," or "menacingly near." *Id.* As to the youth's first threat ("I could stab you right now"), we concluded that the words "right now" made that threat imminent, even though the youth was unarmed. *Id.* at 695-96. With respect to the second threat ("I thought about doing it while you were in your sleep"), we held that, because it was approximately 8:00 p.m. when the youth threatened to stab her mother "in her sleep," that threat was "sufficiently near at hand to be imminent." *Id.* at 696.

Subsequently, in *Holbert and Noon*, 245 Or App 328, 332-33, 260 P3d 836 (2011), we applied *Dompeling*'s construction of the term "imminent" when considering whether a husband had placed his wife "in fear of imminent

bodily injury" for purposes of the Family Abuse Prevention Act (FAPA).[4] The evidence against the husband included: (1) repeated threats to kill the wife, (2) repeated threats to the wife that if she ever tried to take their children, he would find and kill her, (3) threats to kill the relatives of the wife's new boyfriend, (4) text messages to the wife that read "I won't rest and neither will my resources" and "Let the games begin, it's all over," and (5) a May 12 text message that read "One chance to set it right. No guy friends, no Wal-Mart, no cell phone, no old friends. Think hard if you want your life back and what you're willing to sacrifice for it. No more games. Last shot or it's all over and not just us." *Id.* at 337 (emphasis omitted). Based on that evidence, as well as the court's "explicit finding that wife was credible" in her testimony about past relationship violence, the trial court issued a FAPA restraining order against the husband. *Id.* at 336; 330-31 (noting that "[t]he parties' relationship was volatile long before the events that precipitated the filing of the FAPA petition").

On appeal, applying *Dompeling*'s construction of "imminent," we held that "the trial court could properly determine that, *in the totality of the circumstances*, including [the husband's] repeated death threats, [the husband's May 12] message—and especially its final phrase ('it's all over and not just us')—evinced the requisite imminence" for the purposes of obtaining a FAPA restraining order. *Id.* at 337 (emphasis added). We explained that, although different inferences could have been drawn from the "ominous, arguably ambiguous, final phrase of the May 12 text message," in the context of the parties' turbulent relationship, the husband's message placed the wife in fear of imminent bodily injury. *Holbert*, 245 Or App at 337-38 (citing *Lefebvre v. Lefebvre*, 165 Or App 297, 996 P2d 518 (2000)); *Lefebvre*, 165 Or App at 301-02 (assessing the husband's obsessive conduct *in context* of the wife's knowledge about the husband's prolonged obsession with the idea of killing another person nine years prior).

---

[4] Recognizing that *Dompeling* construed "imminent" with respect to criminal menacing, rather than in the FAPA context, we nevertheless concluded that our analysis was transferable.

In this case, by contrast, the state's evidence is legally insufficient to demonstrate that an objectively reasonable person would have feared a threat of serious injury or death that was "imminent" as we previously interpreted that term in *Dompeling* and *Holbert*. First, the threats to JH are the only instances that made any reference to time (youth told her that she would die at "18 *** down to *** 16, then to 13, and then into three days"). None of those time periods is "near at hand," "impending," or "menacingly near." With respect to MS or MH, the record is devoid of any evidence that youth threatened harm at any particular time. That alone is not dispositive; a threat can be silent as to timeframe while nonetheless implying that the harm is moments away. But the nature of youth's threats in this case does not permit such an inference. Youth's threats to kill his classmates were made during class or while passing in the hallways. There is no evidence that, under these circumstances, youth's body language, actions, or the specific content of the threats implied that he was threatening to carry out violence at that time, as opposed to an unspecified future date. Those threats were not made in the context of a close relationship with any of the victims, or in response to a specific disagreement or escalating conflict. Nor does the record reveal a history of violence or aggression by youth toward any of the three classmates who were the object of his vague and repeated threats of harm. On those facts, an objectively reasonable person might fear the possibility of future harm, but a reasonable person would not understand youth's threats to imply harm that is moments away as required by ORS 163.190.

At youth's hearing, the state conceded that "some of the stuff that [youth] would do"—including his threat to have his older brother rape MH after he got out of prison—"could be classified as non-imminent." The state nevertheless argues that, because youth's threats *could* be carried out at "any time," the threatened harm was sufficient to place a reasonable person in fear of "imminent" serious physical injury. The possibility of unspecified future harm, however, is not the equivalent of "imminent" harm. Under the circumstances of this case, the fact that the harm could happen at "any time," rather than at a time that is

"impending," "near at hand," or "menacingly near," leads us to the opposite conclusion—that the state failed to produce sufficient evidence to support a finding that any of youth's conduct threatened imminent harm.

The juvenile court recognized that the state's evidence of an imminent threat was weak, but it concluded that youth's physical act of drawing his finger across his throat transformed his otherwise vague threats into those that would generate fear of "imminent" serious physical harm in a reasonable person. Respectfully, we reach a different conclusion. It is true that physical acts may be sufficiently suggestive of imminent physical violence to support a conviction under ORS 163.190. *See, e.g., State v. Santacruz-Betancourt,* 157 Or App 26, 32, 969 P2d 1040 (1998), *rev den,* 328 Or 464 (1999) (holding that, because some modern weapons use a laser beam as a sighting mechanism, the act of shining a red laser beam onto the forehead of an elderly couple in their home could constitute menacing); *State v. Lockwood,* 43 Or App 639, 643, 603 P2d 1231 (1979) (concluding that "a reasonable person would have been placed in fear of imminent serious physical injury when the defendant approached the victim's car brandishing a baseball bat and a pistol"). Those physical acts, however, have little in common with youth's gesture of drawing a finger across his throat while passing his classmates in the school's hallways. Taken in context, youth's symbolic gestures were additional expressions of his vague threats to inflict harm in the unspecified future; they would not have caused a reasonable person to conclude that harm had suddenly become "menacingly near."

For the foregoing reasons, we conclude that the state presented insufficient evidence that youth engaged in conduct that, if committed by an adult, would constitute the crime of menacing. Youth's conduct, while cause for reasonable concern among his classmates, is not the type of behavior that the menacing statute was designed to criminalize. Accordingly, the juvenile court erred in finding youth within the court's jurisdiction.

Judgment on Counts 1, 3, and 4 reversed; otherwise affirmed.