Argued and submitted August 17, 2022, reversed January 25, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HAMID MICHAEL HEJAZI,
*Defendant-Appellant.*

Lane County Circuit Court
19CR58017; A174349

524 P3d 534

Defendant challenges his convictions for menacing, ORS 163.190, and stalking, ORS 163.732, assigning error to the trial court's denial of his motions for judgment of acquittal on both charges. He argues that the state failed to prove menacing because his threat lacked imminency and that there was insufficient evidence to support the stalking conviction because two of his three interactions were expressive, speech-based contacts that must be subjected to a heightened standard under *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). Under that standard, defendant argues that the state failed to prove the minimum two contacts required by the statute. *Held*: Viewing the facts in the light most favorable to the state, the Court of Appeals concluded that neither defendant's words nor his actions were sufficient to prove that defendant's threat was imminent. The court further concluded that it was defendant's expressive conduct that caused alarm, and thus the conduct must be measured against the heightened standard. The record was insufficient to meet that standard. Accordingly, the trial court erred in denying defendant's motions for judgment of acquittal for both menacing and stalking.

Reversed.

Suzanne B. Chanti, Judge.

Brett Allin, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Hamid Michael Hejazi filed the supplemental briefs *pro se.*

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Reversed.

**POWERS, J.**

Defendant challenges his convictions for menacing, ORS 163.190, and stalking, ORS 163.732, assigning error to the trial court's denial of his motions for judgment of acquittal on both charges and also raising 16 additional *pro se* assignments of error. On appeal, defendant renews his argument that the state failed to prove menacing because his threat to kill R and R's family lacked imminency and was fantastical. He further argues that there was insufficient evidence to support a stalking conviction because, at most, only one of his contacts with R qualified, which falls short of the minimum of two qualifying contacts required by the stalking statute. Crucial to that analysis is a determination of whether defendant's second interaction with R should be categorized as an expressive, speech-based contact. If it was expressive, as defendant contends, then it is subjected to a heightened standard. The state asserts that the heightened standard does not apply, remonstrating that it was the nonexpressive aspects of defendant's conduct that caused R's alarm. Alternatively, the state contends that, even under the heightened standard, the record provides sufficient evidence for a reasonable factfinder to conclude that the elements of stalking were met.

As explained below, we conclude that it was defendant's expressive conduct that caused R alarm, and thus the conduct must be measured against the heightened standard. We further conclude that the record is insufficient to meet that standard. Additionally, because we conclude that the state failed to prove that defendant's threat was imminent, we reverse the trial court's denial of the motions for judgment of acquittal for both menacing and stalking. Finally, we briefly address and reject defendant's *pro se* assignments of error to the extent that they do not overlap with issues discussed herein.

We begin with defendant's challenge to the trial court's denial of his motions for judgment of acquittal for the crimes of menacing and stalking. We review the denial of those motions by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable

credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Fuller*, 303 Or App 47, 48, 463 P3d 605 (2020). We describe the facts in accordance with that standard of review.

At issue are three encounters between defendant and R, an attorney who represents clients in Eugene Municipal Court. The first encounter occurred while R, who did not know defendant, was in the hallway of the courthouse. Defendant, who knew that R was an attorney, approached and asked R if he would talk to him about his case. R responded that he would, but first he needed to talk to his clients who were waiting for him. Defendant responded to R by saying, "I'm going to skin you alive," and then asked, "do you know what that means?" R testified that he took that to mean that defendant "could do some type of harm" to him and was trying to scare him. R did not believe that defendant was actually going to skin him alive in that moment.

Officer Jarrett, who was working as a bailiff at the court at the time, saw the interaction between defendant and R, but could not hear the conversation. Jarrett testified that defendant looked "animated" and "excited." After witnessing the interaction, Jarrett told R that, on a different occasion, defendant had found where someone lived using Facebook.[1]

The second and third encounters occurred about a week later. The second interaction involved R walking on the sidewalk toward the courthouse when defendant called out to him from the other side of the street. Defendant crossed the street toward R, asking why R had conflicted off of defendant's case. R later testified that he was "a little concerned," but was not "super apprehensive," as defendant approached him. R told defendant that he did not have to talk to him and kept walking. He did not face defendant but could feel him following very close behind. When R refused to talk, defendant said, "I could hit you right now." R did not stop walking, but said, "if you hit me, it would be an

---

[1] Jarrett's testimony about defendant using Facebook was admitted over defendant's hearsay objection for the limited purpose of showing R's state of mind during subsequent interactions.

assault." R sensed that defendant was getting frustrated and saw something that looked like a piece of paper fly past his shoulder as he was walking quickly to get to the courthouse. Defendant yelled, "I'm going to kill you and your family." R turned around and saw defendant walking quickly away. R testified that he felt "fear" and that he was "extremely worried" when defendant threatened him and his family. He continued walking to the courthouse.

The third encounter occurred a couple of hours later that same day inside the courthouse. After attending meetings, R was in the courtroom when he saw defendant standing by the door pointing at him. R was alarmed to see defendant again and "felt in fear" when defendant pointed at him. Officer Alvarez, who was working at the court, also saw defendant come into the courtroom and point at R, "bearing a contorted, sardonic grin," before turning and leaving. Alvarez described R as looking "very upset" and "unsettled." R found a photo of defendant online, texted it to his family, and told them that if they saw defendant near the house, they should lock the doors and call the police. R also deleted his Facebook account and installed a home security system.

The state charged defendant with one count of menacing, ORS 163.190, and one count of stalking, ORS 163.732, and defendant proceeded to a jury trial. At trial, defendant moved for judgment of acquittal on both charges, arguing that there was no imminent threat and that the contact with R was not shown to be unwanted. The trial court denied both motions, concluding that two of the contacts, at least, were unwanted and that the totality of the circumstances showed that there was escalating behavior by defendant. The jury found defendant guilty on both counts. Defendant now appeals, assigning error to the trial court's denial of his motions for judgment of acquittal for both charges.

We begin with defendant's challenge to the menacing conviction. ORS 163.190 provides, "A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." Defendant contends

that neither his actions nor words presented a realistic or imminent threat to R. He argues that there was no evidence that defendant even knew if R had a family, that he did not appear to be armed, that they were in a populated place, and that nothing about his physical actions were sufficient to place a reasonable person in fear of imminent, serious physical injury.

The state remonstrates that the evidence was sufficient for a rational factfinder to conclude that the threatened harm was imminent—in particular, it argues that defendant's actions showed a pattern of physically approaching and verbally threatening R. Such behavior presented an imminent threat, the state contends, because defendant specifically targeted R, and the pattern of his behavior was sufficient to cause a reasonable person to believe that he would act at any moment. The trial court agreed and concluded that the totality of defendant's escalating behavior was sufficient for a reasonable juror to find that all of the elements of menacing were met. Because we conclude that the record lacks evidence showing that defendant's threat was imminent, we disagree.

An "imminent" threat is one that is "near at hand," "impending," or "menacingly near." *State ex rel Juv. Dept. v. Dompeling*, 171 Or App 692, 695, 17 P3d 535 (2000). When examining the context of the threat to determine whether the threat meets the imminency requirement, two of our cases are illustrative. In *Dompeling*, a youth challenged the imminency of a threat she made against her mother. *Id*. Upset with her mother, the youth stated, "I could stab you right now," and "I thought about doing it while you were in your sleep." *Id*. at 694. We held that both statements threatened imminent injury because of the use of the words "right now" and because the incident occurred at eight o'clock in the evening and "the threat of being stabbed within the next few hours is sufficiently near at hand to be imminent." *Id*. at 695-96.

In *State v. C. S.*, 275 Or App 126, 130, 365 P3d 535 (2015), a youth challenged the imminency of threats that he made against three other students. In the classroom and

in the hallways, the youth told the other students that they were going to die and that he was going to kill them. *Id.* at 128. The youth told one student that she was going to die in three days, and if she didn't, he would stab her with a pencil until she did die. *Id.* The youth would also draw his finger across his neck when he walked past the students in the hallway. *Id.* at 129. We held that such threats were insufficient to demonstrate that an objectively reasonable person would have feared a serious, imminent injury. *Id.* at 133. We noted that, although an objectively reasonable person might fear the possibility of future harm, the youth's threats did not imply that the harm was "moments away" or imminent for the purposes of the menacing statute. *Id.*

Turning to the facts of this case, we agree with defendant's argument that this case is more analogous to *C. S.* than it is to *Dompeling*, and that the record is insufficient to prove imminency beyond a reasonable doubt. Defendant's threat to kill R and his family was certainly a threat of serious physical injury and an objectively reasonable person might fear the possibility of future harm. However, defendant's words and actions did not create a situation where that threat of harm was "near at hand," "impending," or "menacingly near." First, upon making the threat—which lacked specificity or any temporal indication—defendant walked quickly away from R. Therefore, despite approaching R and following him closely prior to the threat, defendant's physical actions did not create a situation supporting an inference that the serious harm was imminent. Second, although defendant told R that he could hit him "right now," that statement came before the threat to kill R and is not a threat of serious personal violence akin to the youth threatening to stab her mother in *Dompeling*. In our view, defendant's threatening words align more closely with the threats made by the youth in *C. S.* that he would kill his classmate by stabbing her with a pencil if she didn't die in three days. Therefore, even assuming that defendant's threats were realistic and not fantastical and considering the facts in the light most favorable to the state, we conclude that the record lacked sufficient evidence to show that defendant's threat of serious harm was imminent. Although we do not doubt that defendant's conduct incited alarm and fear and was

undoubtedly disturbing for R, a conviction for the charge of menacing requires more. Accordingly, we conclude that the trial court erred in denying defendant's motion for judgment of acquittal on the menacing charge.

Next, we address defendant's challenge to the denial of his motion for a judgment of acquittal for stalking, ORS 163.732, which provides, in part:

"(1)   A person commits the crime of stalking if:

"(a)   The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Thus, a person may be convicted for stalking when he, she, or they knowingly alarm or coerce another person by making repeated and unwanted contacts with that person. "Repeated" means two or more times. ORS 163.730(7). Additionally, the state must prove that: (1) the victim was in fact alarmed or coerced as a result of the repeated and unwanted contacts and (2) the victim's apprehension about personal safety was objectively reasonable. *State v. Shields*, 184 Or App 505, 510, 56 P3d 937 (2002), *rev den*, 335 Or 355 (2003).

A "contact" can include almost any interaction with the defendant and can be categorized as either non-expressive (physical or visual) contacts or expressive (spoken or written) contacts. *D. W. C. v. Carter*, 261 Or App 133, 140, 323 P3d 348 (2014). Because restrictions on expressive contacts raise freedom of expression concerns under the state constitution, the Supreme Court has interpreted the stalking statute to require a heightened standard for expressive contacts to comply with Article I, section 8, of

the Oregon Constitution.[2] *State v. Rangel*, 328 Or 294, 302, 977 P2d 379 (1999). For an expressive contact to qualify as a contact under the stalking statute, the communication must articulate a threat or its equivalent. *Id*. The Supreme Court has described a threat in this context as "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id*. at 303. Therefore, because expressive contacts are evaluated under a higher standard, our first step is to determine whether the contacts at issue were expressive or nonexpressive.

Defendant argues that the heightened standard applies to at least the first two of the three contacts with R because they were expressive. Regarding his comment during the first encounter that he would skin R alive and his statement during the second encounter that he would kill R and R's family, he asserts that the source of R's alarm was based entirely on his words. Therefore, he contends that those two contacts must be analyzed under the heightened standard required by *Rangel*. Under that standard, defendant argues that his words did not constitute a threat and cannot qualify as a contact for purposes of the stalking statute. As we understand his argument, defendant concedes that the third incident when he pointed at R in the courtroom was a qualifying contact but maintains that a conviction for stalking requires at least two qualifying contacts.

For its part, the state agrees that the first interaction was not a qualifying contact but contends that the second contact between defendant and R on the sidewalk involved more than expressive, speech-based conduct. The state asserts that the nonexpressive aspects of that contact—including defendant's approach, entering R's personal space, and throwing the paper—were sufficient to amount to a qualifying contact and do not invoke the heightened *Rangel* standard. Alternatively, the state argues that the threat to kill R and his family qualified as a threat even under the *Rangel* standard because it was an imminent

_____

[2] Article I, section 8, of the Oregon Constitution provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

threat of serious violence likely to be followed by unlawful acts.

The trial court agreed with the state that the *Rangel* standard did not apply to the second or third contact, concluding that defendant crossing the street and following R was "not a pure communication." Accordingly, the trial court concluded that defendant's conduct was sufficient to find that he knowingly alarmed R and thus, that the second and third encounters qualified as contacts for purposes of the stalking statute.

As an initial matter, we agree with the parties and the trial court that the first interaction—where defendant told R that he would skin him alive—was not a qualifying contact for purposes of the statute. The contact was entirely expressive, and defendant's words were not sufficient to qualify as a threat that would have caused R to fear imminent and serious personal violence. Therefore, the issue is whether the second contact—where defendant approached R, followed him, and yelled that he would kill R and his family—should be categorized as expressive or nonexpressive, and whether it qualifies as a contact for purposes of the stalking statute.

Where a contact involves both expressive and nonexpressive conduct, the determination of whether *Rangel* applies depends on which act caused the alarm. *D. W. C.*, 261 Or App at 140.[3] If the nonexpressive conduct causes the alarm, then *Rangel* does not apply; however, if the expressive conduct causes the alarm, then it must meet the *Rangel* standard of a qualifying threat. *See, e.g.*, *S. A. B. v. Roach*, 249 Or App 579, 584 n 3, 277 P3d 628 (2012) (concluding that the nonspeech conduct (*i.e.*, running up to the petitioner) that was separable from the respondent's speech did not give rise to objectively reasonable alarm).

Here, the evidence does not support the conclusion that it was defendant's nonexpressive conduct that caused R's alarm. R testified that when defendant ran towards him,

---

[3] Although *D. W. C.* involves ORS 30.866, the civil stalking statute, we have previously recognized that that statute is the analogue of the criminal stalking statute at issue here, ORS 163.732. *See State v. Martin*, 315 Or App 689, 691, 501 P3d 554 (2021).

"I was a little concerned, but I wasn't like super apprehensive at that point." In contrast, R said that when defendant threatened to kill him and his family, he "felt terrible," "was extremely worried," and "felt fear."

The state argues that, although R did not testify that it was defendant's nonexpressive conduct that caused alarm, a factfinder could still reasonably infer that that was the case. R was walking quickly to get to the courthouse and away from defendant before defendant articulated the threat to kill R and his family. However, the record reflects that defendant's nonexpressive conduct—the running across the street, following close behind, and throwing the paper— was not the cause of R's alarm. Although R started walking quickly before defendant threatened to kill him, defendant had persisted in questioning R about why R would not take his case. Defendant also told R that he could hit R, which R said, "threw bells and whistles." R's testimony about how he felt at that point undercuts any conclusion that the nonexpressive conduct caused sufficient alarm. Accordingly, we conclude that it was defendant's words, not his physical conduct, that caused R's alarm.

Having concluded that defendant's nonexpressive conduct was not sufficient, we consider whether defendant's words constituted a threat under *Rangel*. Again, that standard requires that defendant's words instilled in R a fear of imminent and serious personal violence, were unequivocal, and were objectively likely to be followed by unlawful acts. *Rangel*, 328 Or at 303. Hyperbole, rhetorical excesses, and impotent expressions of anger or frustration—even if they are alarming—are insufficient under *Rangel*. *Id*.; *see also State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985). For the same reasons that we articulated under the charge of menacing, the evidence on record is insufficient to conclude that defendant's threat was imminent for purposes of stalking. Thus, although we believe that defendant's threat to kill R and his family was alarming and troubling, we hold that it did not meet the heightened standard required by *Rangel*. Because a conviction for the crime of stalking requires at least two qualifying contacts, we need not consider here whether the third contact between defendant and

R qualified. In short, the trial court erred in denying defendant's motions for judgment of acquittal.

Finally, we address briefly defendant's 16 *pro se* assignments of error. Our dispositions on his first two assignments of error obviate the need to address the bulk of defendant's *pro se* assignments of error because they are now moot. Defendant's twelfth *pro se* assignment of error, as we understand it, is substantively the same challenge raised in his second assignment of error and therefore we need not separately address it.

In sum, because the record lacked evidence that defendant's threats against R and his family were imminent, and because the state failed to prove two qualifying contacts for purposes of the stalking statute, the trial court erred in denying the motions for judgment of acquittal on both the menacing and stalking charges.

Reversed.