176 November 15, 2023 No. 594

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

J. S.,
*Petitioner-Respondent,*

*v.*

Jonas Miles HUDGINS,
*Respondent-Appellant.*

Deschutes County Circuit Court
22SK02899; A179952

Michelle A. McIver, Judge.

Submitted April 7, 2023.

R. Brady Williams filed the brief for appellant.

J. S. filed the brief *pro se*.

Before Ortega, Presiding Judge, and Powers, Judge, and
Hellman, Judge.

HELLMAN, J.

Reversed.

**HELLMAN, J.**

Respondent appeals from the trial court's entry of a civil stalking protective order (SPO) against him under ORS 30.866.[1] In his assignment of error, respondent contends that the trial court erred when it determined that the statutory requirements for an SPO were satisfied. Specifically, he argues that there were not repeated contacts as required by ORS 30.866 because the only contacts alleged—three of his text messages—were constitutionally protected speech under Article I, section 8, of the Oregon Constitution.[2] As explained below, we reverse.

As a preliminary matter, we note that neither party requested *de novo* review and that this is not a case that warrants such review. *See* ORS 19.415(3)(b) (describing discretionary *de novo* review); ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). Therefore, in conducting our review, "'we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome.'" *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021) (quoting *J. D. K. v. W. T. F.*, 276 Or App 533, 537, 369 P3d 1181 (2016)).

During the summer of 2022, petitioner received several text messages from respondent, his former neighbor. The first message, which respondent sent on July 20 while petitioner and his wife were out of town, provided: "Is there a moment your wife wouldn't be murdered where she stood leaving work tomorrow? I don't think so. See you at work tomorrow. Do you guys normally use diesel? We do." In addition to the message, respondent sent a recording of a phone call that petitioner's wife, DS, had made to the police in 2020 about respondent.

---

[1] In civil stalking cases, we ordinarily refer to the parties by their designation in the trial court. *J. D. K. v. W. T. F.*, 276 Or App 533, 534 n 1, 369 P3d 1181 (2016) (so stating).

[2] Article I, section 8, of the Oregon Constitution, provides, in relevant part, that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever[.]"

Although respondent apologized in a subsequent text message, he sent petitioner the following messages on August 5:

- "I figured out the neighbor. Just don't step to me again if you care about your life. I'm sorry because of your hostility towards me, that I assumed it was you. I should never have assumed that. Now that I know who it's been, it makes sense. I'm going through a lot. We're cool, just the next time you step to me may be the last time you can walk."

- "Weaponizing children is illegal, right? In this state. How low could your community go? Obviously very low. Speak to your boss. I'm after you all. At work or wherever on this planet."

Later that month, petitioner and DS each petitioned for individual SPOs against respondent. They relied on the three text messages that respondent had sent to petitioner that summer and did not allege any other contacts. During two *ex parte* hearings, petitioner and DS testified that respondent, his domestic partner, and their children had lived across the street for several years and that respondent had recently moved out. In support of the petitions, DS testified that in 2020 she saw an incident between respondent and another woman at respondent's home that "looked like *** domestic violence in the early stages."[3] DS explained that she reported the incident to the police because she is a "mandatory reporter."[4] Petitioner and DS also testified that respondent's domestic partner had a restraining order against him. The trial court granted both temporary SPOs.

At the contested hearing, DS testified that she believed that respondent was retaliating against her family because of her 2020 call to police. Respondent testified that, even though he had moved out in June 2022 and the landlord had changed the locks, he entered his former home

---

[3] The evidence in the record does not explain the relationship between respondent and the woman involved in the incident.

[4] ORS 419B.010 provides, in part, that "[a]ny public or private official having reasonable cause to believe that any child with whom the official comes in contact has suffered abuse or that any person with whom the official comes in contact has abused a child shall immediately report or cause a report to be made[.]" ORS 419B.005(6) lists the occupations that render an individual a "public or private official."

in July 2022 through an unlocked window. The trial court granted both permanent SPOs and this appeal followed.

Before it can issue an SPO, a trial court must find that, among other requirements not challenged in this appeal, a respondent engaged in at least two qualifying contacts. *See* ORS 30.866 (requiring a petitioner to establish that the respondent made "repeated and unwanted contact"); ORS 163.730(3) (defining "contact" to include "[s]peaking with the other person by any means"); ORS 163.730(7) (defining "repeated" as "two or more times").

When a petition is based solely on expressive communication—like verbal statements or text messages—at least two of those communications "must rise to the level of a threat to be considered * * * qualifying unwanted contact[s]." *A. M. M. v. Hoefer*, 269 Or App 218, 223, 344 P3d 121 (2015). Qualifying threats are communications that "instill[] in the addressee a fear of imminent and serious personal violence from the speaker, [are] unequivocal, and [are] objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).[5] In contrast, when a petitioner alleges only "nonexpressive conduct" in support of an SPO—like physical acts or encounters—the *Rangel* standard does not apply. *State v. Hejazi*, 323 Or App 752, 761, 524 P3d 534 (2023); *see also D. W. C. v. Carter*, 261 Or App 133, 144, 323 P3d 348 (2014) (reversing the trial court's denial of an SPO because "there were at least two

---

[5] We note that, although we have consistently applied *Rangel* in the civil stalking context, *see*, *e.g.*, *S. L. L. v. MacDonald*, 267 Or App 628, 630, 340 P3d 773 (2014), neither we nor the Supreme Court has undertaken a complete analysis under Article I, section 8, to determine if the stringent narrowing construction that the Supreme Court gave to the criminal stalking statute at issue in *Rangel* is necessary to prevent overbroad application of ORS 30.866. *See Delgado v. Souders*, 334 Or 122, 142, 142 n 11, 46 P3d 729 (2002) (declining to analyze Article I, section 8, overbreadth challenge to ORS 30.866 based on the respondent's concession that *Rangel* disposed of that claim, respondent's failure to raise different arguments from *Rangel*, and the fact that the civil and criminal statutes contained some identical elements, but also noting that the two statutes differ in several respects); *but see Hanzo v. deParrie*, 152 Or App 525, 542, 953 P2d 1130 (1998) (applying Court of Appeals' different narrowing construction of the criminal stalking statute set out in *State v. Rangel*, 146 Or App 571, 934 P2d 1128 (1997), *aff'd*, 328 Or 294, 977 P2d 279 (1999), which focused on the intent of the speaker rather than the effect on the addressee, to the civil stalking statute based on the "material similarities").

qualifying contacts that were nonexpressive that would cause objectively reasonable alarm").[6]

Under that legal framework, we determine that the evidence was insufficient to establish two qualifying contacts under ORS 30.866 because two of respondent's three messages did not constitute threats under *Rangel* and no other contacts were alleged.

The circumstances surrounding the first text message indicate that any threatened violence was neither imminent nor "objectively likely to be followed by unlawful acts." Even though the message unequivocally detailed serious personal violence—DS's murder at her workplace the next day—an imminent threat must convey that serious personal violence is "impending," "near at hand," or "menacingly near." *See Hejazi*, 323 Or App at 757. However, petitioner testified that he and DS were out of the state when he received the message and the record lacks evidence about when DS planned to return to work, when the couple would have returned to Oregon, or whether respondent knew where they were. Because respondent threatened to harm DS at her Oregon workplace when she was, in fact, out of the state, the record is insufficient to support a determination that serious personal violence to petitioner or DS was "menacingly near." *See id.*

Relatedly, the record is insufficient to establish that the first text message "instill[ed] an objectively reasonable fear that respondent had the ability to carry out any threatened harm." *See N. M. G. v. McGinnis*, 277 Or App 679, 687, 374 P3d 941 (2016). To be sure, petitioner's testimony supports a determination that he experienced subjective fear of violence from the text message. However, the record contains insufficient evidence that it was objectively reasonable to fear that respondent could have carried out his threat. As petitioner's testimony confirmed, even the police "understood that we were obviously in no way in

---

[6] Although we observe that respondent accompanied the first text message with a recording of DS's 2020 call to the police and that DS testified that respondent was retaliating against her because of that call, which she made as a mandatory reporter, the legal analysis remains the same even for persons who seek SPOs as a result of the performance of their statutory duties.

bodily harm at that point because he had no access to us." Because the record lacks evidence that respondent would have been able to find petitioner or DS at the time he made the threat, it was not objectively reasonable for a person in petitioner's situation to fear that respondent could carry out the threatened violence. *See id.* at 682, 687-88 (concluding that the respondent's text message to the petitioner that he had found her house and that she had "one last chance" was insufficient to create objectively reasonable fear because he was at the wrong house, the petitioner was out of town when she received the message, and she testified that there was "no way for him to find [her]"). Consequently, we conclude the first text message is not a qualifying threat under *Rangel.*

For similar reasons, when viewing the second message in the light most favorable to petitioner, we conclude that it does not satisfy the *Rangel* standard because it did not threaten imminent harm. Respondent's second message, which he sent more than two weeks after the first message, stated that petitioner should not "step to" respondent again because it "may be the last time [petitioner] can walk." Although "a threat can be silent as to timeframe while nonetheless implying that the harm is moments away," *State v. C. S.*, 275 Or App 126, 133, 365 P3d 535 (2015), the contingent nature of respondent's statement undercuts its imminency. *See S. L. L. v. MacDonald*, 267 Or App 628, 632, 340 P3d 773 (2014) (explaining that a statement was contingent and not imminent because the threatened "harm would occur only if [the] petitioner acted in a specified, voluntary manner"). Therefore, we conclude that the second text message does not constitute a threat under *Rangel.*

Here, two of the three text messages on which petitioner relied do not qualify as threats under *Rangel.* Because those messages were constitutionally protected speech, they "can be relevant as context for other, nonexpressive contacts" but cannot qualify as unwanted "contacts" for the purposes of an SPO. *See M. F. v. Baker*, 325 Or App 787, 790, 530 P3d 142 (2023). Accordingly, we express no opinion as to whether respondent's third text message to petitioner that he was "after you all" satisfies the *Rangel* standard because even if

it did, ORS 30.866 requires evidence of "two or more" contacts. On this record, the trial court erred when it issued the SPO against respondent.

Reversed.