Argued and submitted December 30, 2020, affirmed November 17, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY WASKOVIAK MARTIN,
*Defendant-Appellant.*

Jefferson County Circuit Court
17CR37593; A170688

501 P3d 554

Annette C. Hillman, Judge.

L. Todd Wilson argued the cause and filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

PER CURIAM

Affirmed.

## PER CURIAM

Defendant appeals his judgment of conviction following a bench trial for stalking, ORS 163.732(2)(a); second-degree criminal trespass, ORS 164.245; and second-degree theft, ORS 164.045. On appeal, defendant raises two assignments of error. As explained, neither supplies a basis for reversal, so we affirm.

In defendant's first assignment of error, he challenges the trial court's admission of evidence of prior bad acts occurring during his relationship with the victim. On appeal, defendant contends that the trial court erred in determining that the evidence was relevant for other non-propensity purposes, and also that the court failed to properly balance the probative value of the evidence against the danger of unfair prejudice under OEC 403. The court ruled that the evidence was admissible under OEC 401 for the nonpropensity reason "to show the context between the two parties with respect to the *mens rea* \*\*\* and potentially identity," and that, under OEC 403, the relevance of the evidence was not substantially outweighed by the risk of unfair prejudice.

We review a trial court's determination of relevance under OEC 401 for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). In this instance, we understand the court to have determined that the evidence in question was relevant to the elements of stalking because it was probative of the tumultuous nature of the parties' relationship. In particular, their relationship history was relevant to prove the requisite mental states of defendant and the victim: defendant's knowledge that his conduct would alarm the victim, ORS 163.732(1)(a); that it would be "objectively reasonable for a person in the victim's situation to have been alarmed" by defendant's conduct, ORS 163.732(1)(b); and that the victim had a "reasonable apprehension regarding the personal safety of the victim" or the members of her immediate family or household, ORS 163.732(1)(c).

That conclusion—that evidence of the context of the parties' relationship is probative of the elements in a stalking case—is in line with our case law. As we noted in *Brown v. Roach*, 249 Or App 579, 587, 277 P3d 628 (2012), for

purposes of ORS 30.866—the civil analog to ORS 163.732—"[t]he victim's situation includes all of the circumstances of the parties' relationship." Similarly, we explained in *Boyd v. Essin*, 170 Or App 509, 518, 12 P3d 1003 (2000), *rev den*, 331 Or 674 (2001), that the factual context of the parties' relationship is probative evidence in a stalking case. That is because "contacts that might appear innocuous in isolation often take on a different character when viewed either in combination *or against the backdrop of one party's assaultive behavior towards the other*," something that bears on the reasonableness of the victim's response to the defendant's conduct. *Id.* (emphasis added). In other words, as we have recognized, the details of the relationship between two parties can shed light on whether a defendant knew that particular conduct would alarm the victim, on what the victim's situation was, and on whether apprehension by the victim is reasonable under the circumstances. Accordingly, the trial court properly admitted the evidence for that purpose, one that does not depend on propensity reasoning about defendant's character. Beyond that, we see no abuse of discretion in the trial court's OEC 403 balancing.[1]

In defendant's second assignment of error, he contends that the trial court erred by denying his motion to preclude testimony by the state's handwriting expert. He argues that the state failed to lay sufficient foundation for its admissibility. We reject that contention without discussion.

Affirmed.

---

[1] Although the court noted that the evidence was "potentially" relevant to identity under a nonpropensity theory during its pretrial ruling, we do not understand it to have squarely ruled on the admissibility of the evidence to show identity at that time, and defendant did not object at trial when the state urged the court to rely on the evidence for the purpose of finding identity. In any event, the evidence did not likely affect the trial court's assessment of identity. Multiple witnesses identified defendant as the perpetrator during several different alleged incidents that occurred on the victim's property. That direct evidence was of much greater probative value than any circumstantial evidence of "identity" provided by the prior bad acts which were not central to any theory of identity.