Argued and submitted February 11, reversed and remanded July 20, petition for review denied December 29, 2022 (370 Or 694)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PETER JOHN ZIELINSKI,
*Defendant-Appellant.*

Marion County Circuit Court
11C40365; A172304

515 P3d 397

Defendant appeals from a judgment of conviction for murder with a firearm for killing his wife. At trial, he did not deny shooting his wife, but presented a defense of extreme emotional disturbance. In his first eight assignments of error, defendant challenges the trial court's decision to admit various pieces of evidence regarding his marital relationship that the state presented to rebut that defense. In his ninth assignment of error, he challenges the trial court's decision to allow the state's cross-examination of his expert witness, Dr. Stanulis, on the details of the crimes for which the expert had been retained in the past. *Held*: The trial court erred when it allowed the state to cross-examine Stanulis about the specifics of the crimes his prior clients had committed. In order to be relevant for the purpose of establishing the expert's bias, the details of the crimes committed by Stanulis's prior clients would need to lead to a reasonable inference that he could not be impartial. Here, the state failed to lay a sufficient foundation to show that the proffered testimony was relevant as to the witness's credibility. That error was not harmless because defendant relied heavily on Stanulis's testimony, and the state emphasized the improper line of questioning in its rebuttal argument to the jury. The Court of Appeals declined to address the evidentiary issues raised in defendant's first eight assignments of error, as a different, more complete record could develop on remand.

Reversed and remanded.

Susan M. Tripp, Judge.

David O. Ferry, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for murder with a firearm for killing his wife. ORS 163.115; ORS 161.610. At trial, he did not deny shooting his wife, but presented a defense of extreme emotional disturbance (EED). ORS 163.135.[1] In his first eight assignments of error, defendant challenges the trial court's decision to admit various pieces of evidence regarding his marital relationship that the state presented to rebut that defense. In his ninth assignment of error, he challenges the trial court's decision to allow the state's cross-examination of his expert witness on the details of crimes for which the expert had been retained in the past. In his tenth assignment of error, he argues that the trial court erred when it denied his motion for a mistrial relating to improper witness testimony. We conclude that the trial court erred in allowing that questioning of defendant's expert witness and that the error was not harmless. Our resolution of that issue obviates the need to decide the remaining assignments of error. We reverse and remand for further proceedings.

This is the second time this case has been before us. Originally, defendant submitted a conditional guilty plea, challenging on appeal the pretrial order excluding expert testimony that defendant had been diagnosed with an anxiety disorder as support for the EED defense. We reversed. *State v. Zielinski*, 287 Or App 770, 404 P3d 972 (2017). After the remand, defendant proceeded to trial, where he raised the defense of EED, which can reduce a charge of intentional murder to manslaughter. *Zielinski*, 287 Or App at 777. Defendant pointed to his military experience, mental-health diagnoses from expert witnesses, and the disintegration of his marriage as sources of his extreme emotional disturbance. The state presented a contrary theory: that

---

[1] ORS 163.135(1) provides, in relevant part:

"It is an affirmative defense to murder in the second degree for purposes of ORS 163.115 (1)(a) that the homicide was committed under the influence of extreme emotional disturbance if the disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act and if there is a reasonable explanation for the disturbance. The reasonableness of the explanation for the disturbance must be determined from the standpoint of an ordinary person in the actor's situation under the circumstances that the actor reasonably believed them to be."

defendant was a controlling husband who ultimately delivered on his previous threat to kill his wife if she ever left him. The jury unanimously found defendant guilty of murder and unanimously rejected the EED defense.

We begin with the ninth assignment of error, as it is dispositive. At trial, defendant presented testimony from three expert witnesses, including Dr. Stanulis, in support of his EED defense.[2] In the course of cross-examination and in an attempt to demonstrate the expert's bias, the state embarked on a line of questioning regarding the prior cases for which Stanulis had provided expert testimony. The state's inquiry failed to focus on aspects of Stanulis's work in those cases, such as the mental health diagnoses. Instead, the state focused almost entirely on the details of the underlying crimes, including a defendant who shot his wife as the police arrived, a defendant who drugged and anally sodomized his estranged partner, and a defendant who sexually abused a six-year-old. The essence of the testimony elicited about those three cases was that the defendants were veterans, they had committed disturbing crimes, and Stanulis had diagnosed them with post-traumatic stress disorder (PTSD).

Defendant argues that the fact that defendant's expert had testified on behalf of veterans who committed heinous crimes is not relevant to show bias without some connection between the violent nature of the offenses and the accuracy of the diagnosis. The state does little to defend that line of questioning but maintains that any error was harmless given the timing of defendant's objections to those questions.

We review relevance determinations under OEC 401 for errors of law. *State v. Martin*, 315 Or App 689, 690, 501 P3d 554 (2021). The standard for relevance presents a very low threshold for the admission of evidence. *State v. Naudain*, 368 Or 140, 149, 487 P3d 32 (2021). "To be relevant, evidence introduced to impeach a witness for bias or

---

[2] Defendant assigns error to "questions involving gratuitous descriptions of prior crimes for which defendant's experts were hired by the defense" but his brief focuses on the cross-examination of Stanulis. Accordingly, we also limit discussion to the testimony of Stanulis.

interest need only have a mere tendency to show the bias or interest of the witness." *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984). A court should afford a party "wide discretion in cross-examination to demonstrate such bias." *State v. Rashad*, 310 Or App 112, 113, 483 P3d 1223 (2021) (internal quotation marks omitted). However, when evaluating the relevance of evidence meant to show bias, there must be more than mere speculation. *See State v. Phillips*, 245 Or App 38, 46, 261 P3d 55 (2011), *rev den*, 351 Or 545 (2012) (reasoning that to show the bias of a witness, reasonable inferences are permissible, but speculation is not).

The trial court erred when it allowed the state to continue this line of questioning. The state began this part of its cross-examination by asking Stanulis whether he was biased in favor of veterans. In order to be relevant for that purpose, the details of the crimes committed by Stanulis's prior clients would need to lead to a reasonable inference that he could not be impartial when evaluating veterans. Here, the state failed to lay a sufficient foundation to show that the proffered testimony was relevant as to the doctor's credibility. Even if the state was entitled to point out that Stanulis was frequently retained in cases involving veterans, and that he regularly testified in favor of the defendant in those cases, the graphic specifics of those crimes, without more, did nothing to undermine the accuracy of the diagnoses or to otherwise demonstrate bias. Without something indicating that the diagnoses of those defendants were somehow improper or that the details of the crimes were relevant to the accuracy of the diagnoses, eliciting testimony about the particulars of those crimes did not increase or decrease the probability that the expert was biased. *See State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) ("[E]vidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action.").

Having determined that the trial court erred by admitting the evidence, we must next determine whether that error was harmless; that is, whether there was little

likelihood that the particular error affected the verdict. *State v. Hightower*, 368 Or 378, 386, 491 P3d 769 (2021); *see also State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling."). In making that determination, we look at all the evidence in the record and "we consider the importance of the erroneously admitted evidence to a party's theory of the case." *State v. Stewart*, 270 Or App 333, 341, 347 P3d 1060, *rev den*, 357 Or 743 (2015); *see State v. Mendoza-Sanchez*, 291 Or App 299, 313, 419 P3d 765 (2018) (when making a harmless error determination "we review all pertinent portions of the record"). We do not weigh the evidence or act as factfinder, but instead look at the likely effect of the error on the verdict. *State v. Marquez-Vela*, 266 Or App 738, 746, 338 P3d 813 (2014).

        The state does not do much to defend this line of questioning, but rather argues that defendant did not object to many of the specific details that Stanulis ultimately confirmed, and thus the error was harmless. The state appears to be relying on our consideration, as part of a harmless error analysis, of "whether the evidence was cumulative of other evidence admitted without objection." *State v. Simon*, 294 Or App 840, 849, 433 P3d 385 (2018), *rev den*, 365 Or 502 (2019). However, as soon as the prosecutor began questioning Stanulis about the particulars of the offenses for which he had been hired as an expert, defendant objected and was overruled. Over the course of the testimony, defendant objected five different times to the facts from those cases being entered into evidence, and the trial court overruled each objection. That defendant did not object to every single answer is not dispositive for the purpose of our harmless-error analysis. *Cf. State v. Barajas*, 247 Or App 247, 251, 268 P3d 732 (2011) (reasoning that for the purpose of preservation we do not require a party to keep making an argument that the trial court has already rejected).

Proceeding to the substance of our analysis, in assessing harmlessness, we consider how the case was tried and the extent to which the disputed evidence was or was not emphasized by the parties and central to their theories of the case. *Simon*, 294 Or App at 849. In this case, defendant relied heavily on expert testimony to support his EED defense. Although there were two other defense experts, Stanulis was the only one to diagnose defendant with PTSD, and his testimony was unique in its discussion of PTSD's effects on individuals and how it can manifest in veterans in particular. *See State v. Johnson*, 225 Or App 545, 550, 202 P3d 225 (2009) (reasoning that we assess the erroneously admitted or excluded evidence in light of other evidence in the record pertaining to that issue). During direct examination, Stanulis outlined how the behaviors that defendant exhibited in the months leading up to the shooting were consistent with PTSD and military culture.

A key part of defendant's defense was how his military history and psychological state impacted his ability to react appropriately to the disintegration of his marriage. Stanulis's testimony was an important component of that argument. And although the erroneous cross-examination of Stanulis was brief, the state chose to amplify it to the jury. *See State v. Carrillo*, 304 Or App 192, 204, 466 P3d 1023, *rev den*, 367 Or 220 (2020) (how the parties used the challenged evidence at trial is a consideration in determining whether the error was harmless). In its rebuttal argument, the state returned to the improper cross-examination of Stanulis, saying

> "Ask yourselves whether you perceived bias from these expert witnesses. Dr. Brown, Dr. Stanulis, what do they do? They're the dynamic duo. *A veteran is charged with a violent crime, a sexual offense*, they work together. That veteran's got PTSD. That means they can't control their behavior. It's not credible because they go in with one mindset and one mindset only. They weren't looking at all of the circumstances. They didn't look at all of the evidence. They went in to find one conclusion. And that's your job. Your job is to determine did what they say ring true to me? Did what they say make sense?"

(Emphasis added.) One of the last things the jury heard was the state's reference to the inappropriate line of questioning of defendant's expert. *See State v. Bevan*, 235 Or App 533, 544, 233 P3d 819 (2010) (prosecutor emphasizing erroneously admitted evidence in opening and closing argument weighed against a finding of harmlessness). Given that and the fact that the defense theory relied significantly upon the testimony of Stanulis, we cannot conclude that the error in this case was harmless.

Moving to defendant's first eight assignments of error relating to evidentiary decisions, we can resolve issues of law that are likely to arise on remand when we determine that it is appropriate to do so. *State v. Benton*, 317 Or App 384, 430, 505 P3d 975 (2022). Before trial, the parties sought rulings on the admissibility of a wide variety of evidence of defendant's previous behavior and statements to the victim over the course of their relationship. The trial court ruled that most of the evidence was relevant and admissible under (1) the doctrine of chances and (2) the theory that defendant's reliance on the EED defense made evidence "that Defendant suffered an enduring and pervasive set of maladaptive behaviors, such as ill-temperament, jealousy, suspicion, cruelty, unconstrained anger" and evidence that "Defendant did not care for his spouse, that he had treated her as having no worth, that he had acted in a cruel and angry manner, and that he made direct or veiled threats of harm," at any time during their approximately seven years of marriage, relevant and admissible.

We observe that when presenting an EED defense to the jury, the question is whether defendant was under the influence of an emotional disturbance to the extent that he lost the capacity to control himself and forego the homicide. *State v. Ott*, 297 Or 375, 397, 686 P2d 1001 (1984). The disturbance cannot be a result of defendant's own intentional, knowing, reckless or criminally negligent act. ORS 163.135(1). Lastly, the jury must determine what defendant's situation was in the circumstances which defendant reasonably believed to exist, and then the jury must determine if an ordinary person in that situation and those circumstances would have experienced EED. *Ott*, 297 Or at 398. When EED is presented in the context of a marital

relationship, evidence as to the nature and quality of the relationship should be tailored to inform that inquiry.

On appeal, in eight assignments of error, each challenging a different item of evidence, defendant argues that all of the trial court's reasons for admitting the evidence were erroneous. The state concedes that, in light of *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021), the court erred in relying on the doctrine of chances, but it defends at least the latter part of the trial court's reasoning, namely, that defendant's reliance on the EED defense made all that evidence of marital strife relevant and admissible.

"[O]ur review of a trial court's ruling is limited to the record as it had developed at the time of the ruling; we do not evaluate a court's pretrial decision with the benefit of hindsight by, for example, taking into account what happened at trial." *State v. Sperou*, 365 Or 121, 137, 442 P3d 581 (2019). That principle convinces us that, in light of our disposition of the case on the ninth assignment of error, it is not appropriate for us to resolve the legal issues raised in defendant's first eight assignments of error. The decision whether to admit any particular piece of evidence of a defendant's prior acts under OEC 404(3) and OEC 403 must be nuanced and context specific. Here, the court's pretrial decision to admit almost all of this type of evidence—before the record was developed and before the details of defendant's theory of the case had been established—makes it impossible for us to adequately consider the probative value of each item of evidence. On remand, the pretrial and trial record will likely develop differently. Accordingly, we need not decide defendant's first through eighth assignments of error here. As previously noted, we also need not address defendant's tenth assignment of error.

Reversed and remanded.