Argued and submitted May 29, reversed and remanded November 4, 1998, petition for review denied April 29, 1999 (328 Or 464)

## STATE OF OREGON,
*Appellant,*

*v.*

## LUCIAN SANTACRUZ-BETANCOURT,
*Respondent.*

(97C-20097; CA A97271)

969 P2d 1040

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Irene B. Taylor, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

The state appeals the trial court's order suppressing evidence. Defendant was charged with two counts of unlawful delivery of a controlled substance and three counts of possession of a controlled substance. ORS 475.992. We reverse and remand.

The facts are uncontroverted. On January 20, 1997, James Schroeder was assisting an elderly couple with their heating system in their West Salem home. Schroeder testified that he was talking to the couple in their kitchen when "all of a sudden there's a red light beam shining on [the man's] forehead, like a laser light beam." Unsure of its origin, Schroeder continued to watch as the beam moved to the forehead of the wife. Schroeder then told the couple to "get down" because he "didn't know if [the laser beam] was attached to a gun."

Schroeder immediately called 9-1-1 and reported the incident. While talking to the 9-1-1 operator he saw a late model Camaro outside the house. As the Camaro left, Schroeder went outside to get a better description of the vehicle. He reported to 9-1-1 that it was a lighter-colored car and indicated the street and direction it was traveling.

On his way home from the elderly couple's house, Schroeder saw a light-colored Camaro coming from the direction he had seen the vehicle go earlier. He called 9-1-1 on his cellular phone and reported that he was "pretty sure" it was the same car from the earlier incident. Schroeder relayed the license plate number and gave a more thorough description of the car, which included "rainbow stickers" on the bumper that said "Mexico" and the vehicle's license number. He described the driver as "a Hispanic or Spanish-type person with a mustache." Schroeder followed the car for several blocks before losing contact.

After hearing the report from the dispatcher, Officer Mayberry of the Salem police located the vehicle at a Safeway store. Mayberry testified that the license number matched the report and the description of the car was identical. He testified as to his reason for wanting to speak with the driver:

"We had a report that an occupant of this vehicle was shining a red laser-type beam into homes in West Salem and I was concerned that we may possibly have a menacing situation, so I was concerned that there were weapons in the car."

On cross-examination, Mayberry testified:

"[Defense]:   You said you were concerned about menacing or weapons in the car. What led you to those concerns?

"[Mayberry]:   Typically a red laser-type light that was being described is sometimes attached to a weapon as an aiming device.

"* * * * *

"[Defense]:   What type of weapon have you found red laser lights attached to?

"[Mayberry]:   I haven't personally found any, but I've seen some.

"[Defense]:   Which type of weapons?

"[Mayberry]:   Semi-auto, handguns, revolvers.

"[Defense]:   You didn't know whether there were—whether this laser light was attached to anything, though; right?

"[Mayberry]:   That's correct, yes.

"[Defense]:   How does the menacing fit in?

"[Mayberry]:   To the best of my knowledge, I believe that a weapon was involved.

"[Defense]:   Okay. You thought that maybe there was a weapon there, how does that fit into menacing?

"[Mayberry]:   Well, if they're pointing it at — into homes in West Salem, we could possibly have a menacing situation."

Mayberry stopped his patrol car behind the Camaro and activated his emergency lights. At that point he contacted defendant, who was alone in the vehicle. Mayberry explained to defendant why he had stopped him and defendant denied being involved in the laser incident. Mayberry requested permission to search the interior of the vehicle for weapons, and

defendant consented. About this time, Officers McFarland and Daniels arrived at the scene. Mayberry asked defendant to step away from the car and he conducted a quick pat-down for weapons. He discovered a pocket knife, which he placed on the hood of the car. McFarland and Daniels searched the interior of the vehicle for weapons.

During the search of the vehicle, the officers discovered a small package they believed was consistent with drug paraphernalia. McFarland told Mayberry that he should request written consent from defendant to search the entire vehicle, which he did. Defendant signed the consent form and a more thorough search resulted in the seizure of heroin, methamphetamine, and cocaine. Neither the initial search nor the subsequent search pursuant to written authorization uncovered any weapons or any instrument capable of emitting a red laser beam.

Defendant moved to suppress, arguing that (1) the initial stop was not supported by reasonable suspicion; (2) that after finding no weapons in their initial search, the officers did not have authority to request consent for a second, more thorough, search; and (3) that defendant's consent was not voluntary. The trial court suppressed all evidence acquired at the scene, concluding that when Mayberry stopped defendant, he did not have a reasonable suspicion that defendant had committed a crime. Because of that conclusion, the trial court did not reach defendant's second and third arguments. We only discuss whether the stop by Mayberry was justified by reasonable suspicion[1] and reverse.

A police officer has authority to conduct an investigatory stop if the officer "reasonably suspects" that a crime has been committed. ORS 131.615(1).[2] Reasonable suspicion means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time

---

[1] The trial court's oral findings and conclusions discuss only whether the stop was justified by reasonable suspicion. Because we reverse on that issue, on remand the trial court should address defendant's additional arguments.

[2] ORS 131.615(1) provides, in part:

"A peace officer who reasonably suspects that a person has committed * * * a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

and place the peace officer acts. ORS 131.605(4). Reasonable suspicion must be based on a subjective belief by the stopping officer that a crime has been committed, and that subjective belief must be objectively "reasonable." *See State v. Belt*, 325 Or 6, 10-11, 932 P2d 1177 (1997).

Here, Mayberry testified that he suspected that defendant had committed the crime of menacing. "A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." ORS 163.190. The parties do not dispute that Mayberry did have the requisite "subjective belief" that a crime had been committed. Defendant argues, however, that that belief was not objectively reasonable.

Mayberry relied entirely on the report of an informant, Schroeder, in formulating his belief that a crime had been committed. In determining whether an informant's statements were sufficiently reliable to give rise to reasonable suspicion, we consider three factors: whether the informant is exposed to possible criminal and civil prosecution if the report is false; whether the report is based on personal observations; and whether the officer's own observations corroborated the informant's information. *See State v. Rickard*, 150 Or App 517, 523, 947 P2d 215, *rev den* 326 Or 234 (1997). Here, each factor strongly supports a finding that Schroeder's reports were sufficiently reliable to create a reasonable suspicion.

First, Schroeder not only provided his name to the authorities but also followed defendant for a short time in an attempt to pinpoint his location for officers. Those acts subjected Schroeder to possible civil and criminal prosecution if the information was false. Second, the information was based on personal observations, both at the original scene and subsequently when he encountered defendant while driving home. Finally, Schroeder's description of the vehicle was precise—from the rainbow bumper stickers to the license plate number. That information was corroborated by Mayberry when he contacted defendant. Based on that information, Mayberry was justified in performing an investigatory stop.

■     The trial court held, however, that while Mayberry may have had reasonable suspicion that defendant had committed the act of shining a red laser beam into a house, that act does not amount to a crime. We disagree with the trial court's analysis. Mayberry had received a report about an individual shining a red laser beam onto the forehead of an elderly couple. He testified that he knew that some modern weapons use a laser beam as a sighting mechanism and that he thought that that might be the case here. Because laser devices are used to sight weapons, the use of a laser in the manner described in the report could constitute menacing. *See* ORS 163.190. Hence, Mayberry reasonably could suspect, as he did, that defendant had committed a crime. That suspicion gave Mayberry authority to stop defendant to investigate that crime.

Reversed and remanded.