**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN WESLEY LIWANAG COQUICO, *Petitioner*, <br><br> v. <br><br> LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 09-73867 <br><br> Agency No. A045-903-122 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 7, 2014—San Francisco, California

Filed June 17, 2015

Before: Sidney R. Thomas, Chief Judge, and Diarmuid F.
O'Scannlain and M. Margaret McKeown, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY*

### Immigration

The panel granted John Coquico's petition for review of the Board of Immigration Appeals' decision finding that his conviction for misdemeanor unlawful laser activity, in violation of California Penal Code § 417.26, is a categorical crime involving moral turpitude.

The panel concluded that § 417.26 can be violated by conduct which resembles non-turpitudinous simple assault and has little similarity to turpitudinous terrorizing threats, and held that a violation does not constitute a categorical CIMT. Because the government did not ask the court to apply the modified categorical approach, the panel considered only whether the categorical approach was satisfied, and remanded for further proceedings consistent with the opinion.

### COUNSEL

Heliodoro Moreno, Jr., Law Offices of Robert B. Jobe, San Francisco, CA, argued the cause for the petitioner. Robert B. Jobe, Law Offices of Robert B. Jobe, San Francisco, California, filed the briefs for the petitioner.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Juria L. Jones, Office of Immigration Litigation, United States Department of Justice, Washington, DC, argued the cause for respondent. Tony West, Assistant Attorney General, U.S. Department of Justice, Civil Division, Washington, DC, filed the briefs for the petitioner. With him on the briefs were Michelle G. Latour, Assistant Director, and Phillip M. Truman, Trial Attorney, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether "unlawful laser activity" under state law is a crime involving moral turpitude.

I

On September 1, 2006, John Coquico, a citizen of the Philippines, was convicted of misdemeanor "unlawful laser activity" in violation of California Penal Code ("Cal. Penal Code") § 417.26, after using a laser device in the hallway of the Alameda County criminal courthouse. A year later, he was also convicted of second degree robbery in violation of Cal. Penal Code § 211, and the Department of Homeland Security ("DHS") sought his removal under the Immigration and Nationality Act ("INA") as an alien convicted of two or more crimes involving moral turpitude ("CIMT"). *See* INA § 237(a)(2)(A)(ii), *codified at* 8 U.S.C. § 1227(a)(2)(A)(ii).

Though an Immigration Judge ("IJ") agreed with the DHS and found Coquico removable, on appeal the Board of Immigration Appeals ("BIA") found the IJ's reasoning

insufficient and remanded the case so she could provide "a more complete explanation" of her findings.

On remand, the IJ again found Coquico removable due to his convictions under Cal. Penal Code § 211 and § 417.26. Most relevant here, she asserted that "unlawful laser activity" under § 417.26 was a CIMT because it involved the "possession of weapons which are insidious instruments normally used for criminal purposes," and that possessing such weapons was "indicative of a readiness to do evil." Coquico appealed this decision to the BIA.

On November 24, 2009, the BIA dismissed Coquico's appeal, concluding his conviction under § 417.26 was a CIMT because "the crime is committed against a peace officer and the nature of the crime involves using a device which gives the appearance or facade of the use of a deadly weapon." The BIA also concluded § 211 was a CIMT.

Coquico does not challenge the conclusion that the robbery is a CIMT. However, he continues to argue that "unlawful laser activity" is not morally turpitudinous.

II

While we lack jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed a criminal offense," including a crime of moral turpitude, 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A), we retain jurisdiction over "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D). Whether a crime involves moral turpitude is a question of law not subject to the jurisdiction-stripping provision of § 1252(a)(2)(C). *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010).

Determining "whether a conviction under a criminal statute is categorically a crime of moral turpitude involves two steps." *Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc) (quoting *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (internal quotation marks omitted)). "The first step is to identify the elements of the statute of conviction." *Id*. "The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition." *Id*.

## A

We begin our examination of the conviction under § 417.26 by considering what weight to give the BIA's analysis of the statute. Though we review the BIA's construction of state law de novo, *Ceron*, 747 F.3d at 778, we review the BIA's unpublished interpretation of immigration law, including the definition of a CIMT, with *Skidmore* deference. *Id.* "Under *Skidmore*, the measure of deference afforded to the agency varies 'depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

## 1

Here, the BIA's decision suffers from several defects, the first of which is its incorrect description of § 417.26 as requiring the use of "a device which gives the appearance or facade of the use of a deadly weapon." Not only does § 417.2

not discuss "deadly weapons," but its prohibition of the use of any laser *pointer*—not just laser targeting devices—belies the claim that it only regulates instruments that appear deadly.[1]   By including laser pointers within its ambit, § 417.26 goes beyond the regulation of laser targeting systems that could be integrated with deadly firearms.  The statute prohibits aiming or pointing "a laser scope as defined in subdivision (b) of Section 417.25, *or* a laser pointer, as defined in subdivision (c) of that section."  Cal. Penal Code § 417.26  (emphasis added).  A laser scope, as defined in § 417.25(b), is "*capable of being attached to a firearm* and capable of projecting a laser light on objects at a distance," but a "laser pointer" is defined in § 417.25(c) as merely "any hand held laser beam device or demonstration laser product." Cal. Penal Code § 417.25 (emphasis added).  Such handheld laser demonstration devices are certainly not associated with "deadly weapons."

---

[1] The full text of Cal. Penal Code § 417.26 states that:

> (a) Any person who aims or points a laser scope as defined in subdivision (b) of Section 417.25, or a laser pointer, as defined in subdivision (c) of that section, at a peace officer with the specific intent to cause the officer apprehension or fear of bodily harm and who knows or reasonably should know that the person at whom he or she is aiming or pointing is a peace officer, is guilty of a misdemeanor punishable by imprisonment in a county jail for a term not exceeding six months.

> (b) Any person who commits a second or subsequent violation of subdivision (a) shall be punished by imprisonment in a county jail for not more than one year.

Cal. Penal Code § 417.26.

2

Further, though a laser pointer projects a light beam—as laser targeting systems do—California's legislature has made clear that laser pointers, and the beams they project, are innocuous. Under Cal. Penal Code § 417.27, shining a laser pointer "directly or indirectly into the eye [] of another person or into a moving vehicle with the intent to harass or annoy" is punished merely by a fine of $50 or four hours of community service. Cal. Penal Code §§ 417.27(c), 417.27(e). Further, § 417.27 permits the possession of laser pointers on elementary school premises for instructional or school-related purposes. Cal. Penal Code § 417.27(b). If the California legislature considered laser pointers, and the pointers' beams, to give "the appearance or facade of the use of a deadly weapon," it would not have allowed students to take them to school, nor would it have imposed such minor penalties for their use "with the intent to harass or annoy."

Not only do other Cal. Penal Code provisions show that using a laser pointer is not equivalent to terrorizing someone with a laser targeting device, but § 417.26 does not include any "appears-to-be-a-deadly-weapon" element. If California wanted § 417.26 to include such an element, it could have done so, as it did in § 417.4, which prohibits drawing an "imitation firearm . . . in such a way as to cause a reasonable person apprehension or fear of bodily harm." Cal. Penal Code § 417.4. "Imitation firearms" are defined as those "so substantially similar in coloration and overall appearance to an existing firearm *as to lead a reasonable person to perceive that the device is a firearm*." Cal. Penal Code § 16700(a) (emphasis added). The California legislature could have drafted § 417.26 as an analogue to § 417.4, and required the laser pointer be used in such a way as to lead reasonable

persons to believe they were being targeted by a firearm. It did not.

Therefore, the BIA's importation of an "appearance of a deadly weapon" element into § 417.26 is incorrect.

3

As the BIA has failed to identify the elements of the crime correctly, its CIMT analysis is not entitled to deference. *Uppal*, 605 F.3d at 715 ("Because the BIA failed to identify the elements of [the state crime] correctly, its CIMT analysis, in which it compares the elements it has identified to the generic definition of moral turpitude, is misdirected and so merits no deference from this Court.").[2]

III

Having concluded the BIA's analysis is inaccurate, we must proceed to analyze the CIMT issue de novo. Although the contours of what qualifies as a morally turpitudinous act may be ambiguous, we know that a crime involving moral

---

[2] Further, the BIA's inaccurate description of the IJ's reasoning casts additional doubt on the BIA's analysis. The BIA claimed that the "bulk of the Immigration Judge's decision" discussed "whether a conviction under []§ 417.26 involves moral turpitude under the analysis set forth in *Matter of Silva-Trevino*." In truth, the IJ's cursory analysis of § 417.26 was limited to her statement that "[c]ase law has held that possession of weapons which are insidious instruments normally used for criminal purposes is indicative of a readiness to do evil," and a citation to a California case involving illegal possession of a sawed-off shotgun. *See People v. Garrett*, 241 Cal. Rptr. 10 (Cal. Ct. App. 1987). Thus, the BIA's characterization of such statement as a discussion of the turpitude of § 417.26 in light of *Matter of Silva-Trevino* is inaccurate and calls into question its own analysis of § 417.26.

turpitude is "generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards." *Ceron*, 747 F.3d at 779.

## A

To provide substance to these broad principles, we look to the elements of other CIMTs that we have already identified. *Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1269 (9th Cir. 2013).

Here, a CIMT that serves as a helpful point of comparison is Cal. Penal Code § 422, prohibiting "threats with intent to terrorize." *See Latter-Singh v. Holder*, 668 F.3d 1156, 1158 (9th Cir. 2012) (internal quotation marks omitted). Like § 417.26, § 422 prohibits threatening conduct.[3] However, a closer comparison reveals that § 422 prohibits conduct which is far more grave than that regulated by § 417.26.

---

[3] The specific elements of § 422 are:

> (1) willfully threatening to commit a crime that will result in death or great bodily injury to another person; (2) specific intent that the statement be taken as a threat; (3) the threat was "on its face and under the circumstances so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) the threat "caused the victim to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) the "victim's fear was reasonable under the circumstances."

*Latter-Singh*, 668 F.3d at 1160 (citation omitted).

Indeed, the differences between the statutes are stark. Under § 422 the threat must be of "a crime which will result in death or great bodily injury," but § 417.26 only requires that the perpetrator intend the officer apprehend or fear "bodily harm"; § 422 requires that the victim be "in sustained fear" while § 417.26 does not require the victim even be aware the laser was directed at him or her; § 422 requires the threat be so serious that the victim's fear is reasonable, but § 417.26 has no requirement that the victim even experience fear.  Cal. Penal Code §§ 417.26(a), 422(a).

B

Such differences are critical to the CIMT inquiry, as evidenced by the analysis of § 422 employed in *Latter-Singh*. In that case, we established that § 422 is a CIMT by contrasting it with an Arizona "simple assault" statute that we concluded was *not* morally turpitudinous in *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159 (9th Cir. 2006).  *Latter-Singh*, 668 F.3d at 1161–62.  Our decision was based on such contrast, which revealed that § 422 involved more turpitudinous conduct than the simple assault statute.

Here, comparing § 422, § 417.26, and Arizona's simple assault statute reveals that § 417.26 has more in common with non-turpitudinous simple assault than with the morally turpitudinous "threats with intent to terrorize" of § 422. *See Latter-Singh*, 668 F.3d at 1158.

First, the threat in *Latter-Singh* had to be of "death or great bodily injury," which was not the case in *Fernandez-Ruiz* and similarly is not the case in § 417.26.  *Id*. at 1161 (citing *Fernandez-Ruiz*, 468 F.3d at 1165).

Second, the threat in *Latter-Singh* required "the threatened person reasonably to be *in sustained fear* for his or her own safety," whereas the threat in *Fernandez-Ruiz* carried no such "sustained fear" requirement. 668 F.3d at 1162 (emphasis added). Section 417.26 also does not require the *victim* be in "sustained fear"—indeed it does not require that the victim experience any fear at all, merely that the *perpetrator* intend apprehension or fear. Cal. Penal Code § 417.26.

Third, *Latter-Singh* noted that § 422 required an "intent to instill great fear of seriously bodily injury or death" and equated such intent with "the purpose to terrorize." 668 F.3d at 1163 (internal quotation marks omitted). In contrast, § 417.26 requires only the intent to place the victim in "apprehension or fear of bodily harm." Cal. Penal Code § 417.26. This is not equivalent to the intent to "terrorize" that was of "the requisite depravity . . . to satisfy the moral turpitude standard" in *Latter-Singh*. *See* 668 F.3d at 1163 (internal quotation marks omitted).[4]

---

[4] Our precedent casts doubt on whether an intent to cause "apprehension or fear," rather than intent *to injure*, can ever be a CIMT. In *Uppal*, we held that "an assault statute *not* involving a specific intent to injure or a special trust relationship and *not* requiring that the assault cause death or even serious bodily injury cannot qualify as a categorical CIMT." 605 F.3d at 719. Similarly, in *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054 (9th Cir. 2006), we stated that when an act cannot "be characterized as inherently grave, base, or depraved," then "[a]dding to these acts an intent to commit them does not change that conclusion." *Id.* at 1061 (quoting *Mei v. Ashcroft*, 393 F.3d 737, 741 (9th Cir. 2004), for the proposition that "if the crime is trivial, even a deliberate intent to commit it will not demonstrate an intent so 'evil' as to make the crime one of moral turpitude").

The conclusion we must draw from this comparison is that § 417.26 can be violated by conduct that bears a striking resemblance to non-turpitudinous simple assault, and little similarity to turpitudinous terrorizing threats.

Thus, our decisions in *Latter-Singh* and *Fernandez-Ruiz* reveal that a violation of § 417.26 is not categorically a crime involving moral turpitude.[5]

IV

"Finally, where, as here, the government has not asked us to apply the modified categorical approach, we consider only whether the categorical approach is satisfied." *Latu v.*

---

[5] The Government also asserts that § 417.26 is a CIMT merely because it must be committed against a peace officer. Such assertion is incorrect.

As explained by the BIA's own precedential decision in *Matter of Sanudo*—a decision it misapplied in its dismissal of Coquico's appeal— even crimes committed against peace officers have only been found to be a CIMT when they "require proof of the actual infliction of some tangible harm on a victim." *Matter of Sanudo*, 23 I.&N. Dec. 968, 972 (BIA 2006). *See Garcia-Meza v. Mukasey*, 516 F.3d 535, 537 (7th Cir. 2008) (explaining that the BIA has suggested "that battery of a police officer without causing harm is not a crime of moral turpitude," and that even when the victim is a member of the special class of peace officers that "special status alone may not be enough").

*Mukasey*, 547 F.3d 1070, 1076 (9th Cir. 2008) (internal quotation marks omitted).[6] Because the categorical approach is not satisfied, we grant the petition.[7]

**PETITION FOR REVIEW GRANTED**; **REMANDED** for further proceedings consistent with this opinion.

---

[6] Because we end our analysis at the categorical approach, we need not decide whether § 417.26 is divisible under *Descamps v. United States*, 133 S. Ct. 2276 (2013).

[7] This is not a case where it is necessary to remand to the BIA for application of the modified categorical approach. Not only has the BIA "already addressed—albeit under the categorical approach, rather than the modified categorical approach" whether § 417.26 involves moral turpitude, but, moreover, this case involves the interpretation of a state statute, and thus "does not involve an issue the law commits to the agency's expertise." *Fernandez-Ruiz*, 466 F.3d at 1133–34; *see also Latu*, 547 F.3d at 1076.