**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE LUIS FLORES-VASQUEZ,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 20-73447

Agency No.
A208-080-952

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 9, 2022
Portland, Oregon

Filed August 31, 2023

Before: Patrick J. Bumatay and Gabriel P. Sanchez, Circuit
Judges, and M. Miller Baker,* International Trade Judge.

Opinion by Judge Sanchez;
Dissent by Judge Baker

---

* The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

## Immigration

The panel granted a petition for review of the Board of Immigration Appeals' (BIA) dismissal of an appeal of an immigration judge's order denying petitioner Jose Luis Flores-Vasquez's application for cancellation of removal, asylum, withholding of removal, and protection under the Convention Against Torture.

The panel held that a conviction under Oregon Revised Statute § 163.190 does not constitute a crime involving moral turpitude (CIMT). The panel explained that in the BIA's precedential decision in *Matter of J-G-P-*, 27 I. & N. Dec. 642 (BIA 2019), which held that § 163.190 categorically qualifies as a CIMT, the BIA erred in its analysis of this court's prior caselaw. The panel remanded for further consideration of petitioner's application for cancellation of removal.

In an unpublished disposition, the panel denied a petition for review as to the denial of asylum, withholding of removal and protection under the Convention Against Torture.

Dissenting, Judge Baker disagreed with the majority's determination that the BIA's interpretation of a CIMT in *Matter of J-G-P-* conflicts with this court's prior caselaw and is therefore unreasonable. Judge Baker would apply *Chevron* deference to *Matter of J-G-P-*, because the term "moral turpitude" is ambiguous, and the BIA's construction of it is

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not arbitrary, capricious, or manifestly contrary to the statute.

## COUNSEL

Jonathan C. Gonzales (argued) and Jeffrey C. Gonzales, Gonzales Gonzales & Gonzales, Portland, Oregon, for Petitioner.

Christina R. Zeidan (argued), Trial Attorney; John S. Hogan, Assistant Director; Brian M. Boynton, Acting Assistant Attorney General; Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

SANCHEZ, Circuit Judge:

Jose Luis Flores-Vasquez ("Flores-Vasquez"), a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal. He argues that the BIA erred in finding that his prior menacing conviction under Oregon Revised Statute § 163.190 constitutes a crime involving moral turpitude ("CIMT"), rendering him ineligible for cancellation of removal. We agree and grant this portion of the petition.[1]

---

[1] Flores-Vasquez's other claims are addressed in an unpublished memorandum disposition filed concurrently with this opinion.

## I.

Flores-Vasquez entered the United States without inspection in 1991. He visited Mexico for a few weeks before returning to the United States without inspection in 1998 and has not left the country since. Flores-Vasquez's wife is a lawful permanent resident, and they share five adult children who are all United States citizens.

In 2015, Flores-Vasquez was convicted of "menacing constituting domestic violence," a misdemeanor under O.R.S. § 163.190, for threatening his wife with a bread knife. Flores-Vasquez pleaded guilty and was sentenced to four weekends in jail, one year of domestic violence classes, and a two-year restraining order. Soon after, the Department of Homeland Security initiated removal proceedings against Flores-Vasquez. The Immigration Judge ("IJ") ordered Flores-Vasquez removed, finding that menacing under O.R.S. § 163.190 "is categorically a crime involving moral turpitude," rendering Flores-Vasquez ineligible for cancellation of removal. The BIA upheld the IJ's decision, citing its holding in *Matter of J-G-P-*, 27 I. & N. Dec. 642 (BIA 2019) "that a conviction under § 163.190 categorically qualifies as a CIMT."

## II.

A conviction for a crime of moral turpitude renders an alien statutorily ineligible for cancellation of removal. 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2). Although "[w]e lack jurisdiction to review a final order of removal based on a petitioner's conviction of a CIMT," we "retain jurisdiction to determine whether a petitioner's conviction is in fact a CIMT as defined in the Immigration and Nationality Act ('INA')." *Betansos v. Barr*, 928 F.3d 1133, 1137 (9th Cir. 2019).

"Generally, when determining whether a petitioner's conviction is categorically a CIMT, we undertake a two-step process." *Id*. First, we identify the elements of the statute. *Coquico v. Lynch*, 789 F.3d 1049, 1051 (9th Cir. 2015). Second, "we engage in the categorical approach and compare the elements of the statute of conviction to the generic definition of a [CIMT] and decide whether the conviction meets that definition." *Betansos*, 928 F.3d at 1137 (internal quotation marks omitted).

"We use the categorical approach to determine whether a conviction qualifies as a CIMT." *Fugow v. Barr*, 943 F.3d 456, 458 (9th Cir. 2019). Under this approach, "we do not look to the facts of the underlying conviction, but rather to the state statute defining the conviction." *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010). A conviction constitutes a crime of moral turpitude only "if the full range of conduct encompassed by the statute, including the least egregious conduct prosecuted under the statute, is a crime of moral turpitude." *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007) (internal quotation marks omitted). "If there is a 'realistic probability' that the statute of conviction would be applied to non-turpitudinous conduct, there is no categorical match." *Fugow*, 943 F.3d at 458 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).[2]

"Because the BIA has no special expertise in the interpretation of state criminal statutes, we review [the elements of the statute] de novo." *Latter-Singh v. Holder*,

---

[2] "[W]here, as here, the government has not asked us to apply the modified categorical approach, we consider only whether the categorical approach is satisfied." *Latu v. Mukasey*, 547 F.3d 1070, 1076 (9th Cir. 2008) (internal quotation marks omitted).

668 F.3d 1156, 1159 (9th Cir. 2012). However, we afford deference to the BIA's determination whether a state law is categorically a crime involving moral turpitude. *See id.* at 1159–60. Where, as here, the BIA issues or relies on a published decision to reach its conclusion, we apply *Chevron* deference and "defer to the agency's decision so long as it is reasonable." *Reyes v. Garland*, 11 F.4th 985, 993 (9th Cir. 2021) (citing *Chevron U.S.A., Inc., v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984)).

## A.

We begin by identifying the elements of the Oregon menacing statute. Under Oregon law, "[a] person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." O.R.S. § 163.190. "[T]he material elements of the offense of menacing are: (1) intentionally (2) attempting (3) by word or conduct (4) to place another person in fear of imminent serious physical injury." *State v. Anderson*, 641 P.2d 40, 41 (Or. Ct. App. 1982).[3]

The Oregon menacing statute is derived from the common law crime of simple assault. *See State v. Garcias*, 679 P.2d 1354, 1356 (Or. 1984) (en banc). Assault in Oregon occurs "when one intentionally, or with another specified mental state, causes some degree of physical injury

---

[3] Oregon law defines several of these terms. A person acts "intentionally" when the person "acts with a conscious objective to cause the result or to engage in the conduct so described." O.R.S. § 161.085(7). "Serious physical injury" means "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." O.R.S. § 161.015(8).

to another. . . . As thus defined, assault includes only acts performed with the intent to cause injury and does not encompass conduct intended to create apprehension, but not necessarily injury." *Id.* Menacing was enacted as a separate offense to reach this other form of proscribed behavior—the intent to place another in *fear* of injury without intending to injure.[4] *Id.* Accordingly, the Oregon menacing statute prohibits words or conduct intended to place others in fear of imminent serious physical injury where actual injury is neither intended nor accomplished. *See Anderson*, 641 P.2d at 41 ("Menacing covers any situation where the actor attempts to place another person in fear of imminent serious bodily harm and where serious injury is neither intended nor inflicted."); *Garcias*, 679 P.2d at 1356.

The Oregon menacing statute does not require that the intended victim experience any actual fear. "Because the victim's subjective state of mind is not a defined element of the offense, the standard is whether a 'reasonable person' would have been placed in the requisite state of fear." *State v. C.S.*, 365 P.3d 535, 538 (Or. Ct. App. 2015) (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report ("Commentary") § 95, 96 (July 1970) ("'Physical menace' implies such conduct as would cause fear to a reasonable man. The standard to be applied is an objective one.")); *see also State v. Lee*, 23 P.3d 999, 1002 (Or. Ct. App. 2001) ("It bears emphasis that the statute requires proof of an *intent* to

---

[4] The Oregon menacing statute also borrowed from the Model Penal Code definition of simple assault. *Id.* at 1356–57; *see* Model Penal Code § 211.1(1)(c) (Am. Law Inst. 2018) (defining simple assault in part as "attempt[ing] by physical menace to put another in fear of imminent serious bodily injury").

create fear, not that the actor create actual fear in a victim.") (emphasis in original).

## B.

Having identified the elements of the Oregon menacing statute, we next compare these elements with the federal definition of a crime involving moral turpitude to determine whether there is a categorical match. *Orellana v. Barr*, 967 F.3d 927, 934 (9th Cir. 2020). As the BIA observed in its precedential decision *Matter of J-G-P-*, 27 I. & N. Dec. 642 (BIA 2019), "the term 'moral turpitude' generally refers to conduct that is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Id.* at 643 (quoting *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833 (BIA 2016)). A crime involving moral turpitude "requires two essential elements: reprehensible conduct and a culpable mental state." *Id.* at 644.

Ninth Circuit and BIA precedent have long recognized that conviction for simple assault does not involve moral turpitude. *See Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165 (9th Cir. 2006); *Uppal v. Holder*, 605 F.3d 712, 718 (9th Cir. 2010) ("[T]he BIA's caselaw uniformly indicates that an assault statute requiring only general intent cannot be categorically a CIMT."); *In re Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007) ("Many simple assault statutes prohibit a wide range of conduct or harm, including de minimis conduct or harm, such as offensive or provocative physical contact or insults, which is not ordinarily considered to be inherently vile, depraved, or morally reprehensible."); *Matter of Jing Wu*, 27 I. & N. Dec. 8, 10–11 (BIA 2017) ("It is well established that a simple assault or battery that only requires offensive touching or threatened offensive touching

of another committed with general intent that does not result in serious bodily harm is not considered to involve moral turpitude.").  For an assault statute to constitute a CIMT, the statute must "contain[] elements that deviate from those associated with simple assault and battery" and "involve[] some *aggravating factor* that indicates the perpetrator's moral depravity."  *Id.* (emphasis in original).

In *Matter of J-G-P-*, the BIA concluded that the Oregon menacing statute constituted a crime involving moral turpitude because it requires a specific rather than general intent to cause fear in another, and the "level of harm" contemplated by the statute is the intent to cause a victim to be "in apprehension of imminent *serious* physical injury." 27 I. & N. Dec. at 644–46 (emphasis in original).  *Matter of J-G-P-* recognized that the Oregon menacing statute does not require that a victim experience any actual fear or injury, but it concluded that this element "is not necessary to determine that a crime categorically involves moral turpitude because section 163.190 requires evil or malicious intent, and the level of threatened harm . . . is serious and immediate." *Id.* at 647.  The BIA acknowledged that "there is some tension between this conclusion and the decision of the Ninth Circuit in *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1167 (9th Cir. 2006)," but concluded its holding "comports with the holding in *Latter-Singh v. Holder*, 668 F.3d 1156 (9th Cir. 2012), and is not precluded by *Coquico v. Lynch*, 789 F.3d 1049 (9th Cir. 2015)." *Matter of J-P-G-*, 27 I. & N. Dec. at 647–648.  We conclude the BIA erred in its analysis of our prior caselaw.

In *Fernandez-Ruiz*, we held that the BIA erred when it determined that conviction under Arizona's simple assault statute constituted a crime involving moral turpitude.  468 F.3d at 1167–68.  The statute lacked two "crucial" elements

needed to make a CIMT finding.[5]  *Id.* at 1167.  First, the statute did not require a willful or intentional act, only a reckless one.  *Id.* at 1166.  Second, the Arizona statute "contains absolutely no element of injury whatsoever" because it "prohibits conduct that merely places another person 'in reasonable apprehension of' physical injury." *Id.* at 1167 (quoting A.R.S. § 13-1203(A)(2)).  Because a simple assault statute that criminalizes "physical contacts that result in the most minor of injuries or threats that cause no injury at all . . . includes within it acts that are not necessarily base, vile or depraved," we concluded that a conviction under the Arizona statute could not constitute a CIMT.  *Id.*

In *Latter-Singh*, on the other hand, we held that a California statute criminalizing "threats 'with intent to terrorize'" constituted a crime involving moral turpitude. 668 F.3d at 1158, 1162 (analyzing California Penal Code ("CPC") § 422).  Three critical factors distinguished the California threat statue from the Arizona statute in *Fernandez-Ruiz*.  First, we noted that "[a] conviction under § 422 requires both proof of the 'specific intent to injure' required of crimes involving moral turpitude as well as proof of a threat of 'death[] or serious bodily injury,'" factors that were not present in *Fernandez-Ruiz*.  *Id.* at 1161 (citing *Fernandez-Ruiz*, 468 F.3d at 1165, 1167).  Second, we concluded that the mens rea element for § 422 evinced an evil intent because it requires not only that a person threaten

---

[5] Arizona's simple assault statute concerning threatening conduct is almost identically worded to the Oregon menacing statute and prohibits "intentionally placing another person in reasonable apprehension of imminent physical injury."  The statutes differ in only one material respect: the intent to place another in fear of *physical* injury rather than *serious* physical injury.  *Compare* A.R.S. § 13-1203(A)(2) *with* O.R.S. § 163.190.

death or great bodily injury, but that "such threats be made both 'willfully' *and* 'with the specific intent that the statement . . . be taken as a threat.'" *Id.* at 1163 (citing § 422) (emphasis in original).

Third, we observed that "§ 422 criminalizes only that conduct which results in substantial harm" by requiring that the threat be "so unequivocal, unconditional, immediate, and specific" that it cause the victim "to be in *sustained fear for his or her own safety*" or the safety of an immediate family member. *Id.* at 1162 (emphasis added). This element distinguished § 422 from the Arizona assault statute, which "did not have a similar requirement that the person threatened be in *sustained* fear of immediate danger to his or his family's *safety*." *Id.* (emphasis in original).

In *Coquico*, we held that a California statute prohibiting "unlawful laser activity" was not a CIMT, reasoning it had more in common with the simple assault statute in *Fernandez-Ruiz* than with the terrorizing threats statute in *Latter-Singh*. 789 F.3d at 1051, 1053–55 (analyzing CPC § 417.26). Unlike the statute in *Latter-Singh*, Arizona's assault statute and § 417.26 criminalized threatening conduct that did not require the victim be in "sustained fear" for his or her safety. *Id*. at 1054. In fact, § 417.26 does not "require that the victim experience any fear at all, merely that the *perpetrator* intend apprehension or fear." *Id.* (emphasis in original).[6] We concluded that the act of shining a laser pointer at another person, even if accompanied by an intent

---

[6] *Coquico* also observed that "[o]ur precedent casts doubt on whether an intent to cause 'apprehension or fear,' rather than intent to *injure*, can ever be a CIMT," discussing *Uppal*, 605 F.3d at 719 and *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054 (9th Cir. 2006). 789 F.3d at 1054 n.4.

to place that person in fear of bodily harm, was not a CIMT. *Id.* at 1054–55.

The BIA erred in concluding that the "element of actual inflicted fear" is not necessary to determine that a crime categorically involves moral turpitude. *Cf. Matter of J-G-P-*, 27 I. & N. Dec. at 647. This conclusion is directly at odds with our precedent, which explains that at least in the context of assault crimes, a CIMT determination requires *both* an evil or malicious intent and the infliction of actual substantial harm on another. In *Latter-Singh*, we explained that the injury required under § 422—that the victim experience *sustained fear* from the threat—ensured that the statute criminalized only "conduct which results in substantial harm" and excluded non-turpitudinous conduct such as "emotional outbursts" or "mere angry utterances or ranting soliloquies, however violent." 668 F.3d at 1162. In *Coquico* we noted that all three elements listed in *Latter-Singh* are "critical to the CIMT inquiry," 789 F.3d at 1054, and in *Fernandez-Ruiz*, we held that "threats that cause no injury at all . . . includes within it acts that are not necessarily base, vile, or depraved," 468 F.3d at 1167. Our precedent is consistent with *Solon*, which observed:

> [A]t least in the context of assault crimes, a finding of moral turpitude involves an assessment of *both* the state of mind and the level of harm required to complete the offense. Thus, intentional conduct resulting in a *meaningful level of harm*, which must be more than mere offensive touching, may be considered morally turpitudinous.

*Solon*, 24 I. & N. Dec. at 242 (emphasis added).

Like Arizona's simple assault statute, Oregon's menacing statute encompasses "threats that cause no injury at all," *Fernandez-Ruiz*, 468 F.3d at 1167, and unlike CPC § 422, it is not limited to "conduct which results in substantial harm," *Latter-Singh*, 668 F.3d at 1162. Therefore, the statute "includes within it acts that are not necessarily base, vile, or depraved." *Fernandez-Ruiz*, 468 F.3d at 1167.

As discussed above, the Oregon menacing statute prohibits words or conduct that is intended to place others in fear of imminent serious physical injury, but it does not require any intent to cause injury or that the victim experience any actual fear or injury as a result of the criminal act. *Garcias*, 679 P.2d at 1356; *Anderson*, 641 P.2d at 41; *C.S.*, 365 P.3d at 538; *Lee*, 23 P.3d at 1002. Indeed, the menacing statute is capacious enough to cover circumstances where "(1) The victim apprehends the danger but does not fear it"; "(2) The actor's conduct is such as would cause fear to a reasonable man but the intended victim is aware that the actor will not inflict the threatened harm"; or "(3) The intended victim is unaware of the actor's threat, *e.g.*, he is blind and does not know the actor is pointing a gun at him." *Garcias*, 679 P.2d at 1360 n.11 (quoting Commentary § 95).

The menacing statute has been interpreted by state appellate courts to encompass even unsuccessful attempts to cause fear in another. For example, in one case, the Oregon Court of Appeals affirmed the juvenile court's finding that a youth "committed acts that would constitute the crime of menacing if she were an adult." *State ex rel. Juv. Dep't of Klamath Cnty. v. Dompeling*, 17 P.3d 535, 535 (Or. Ct. App. 2000). The youth became "very upset" when her mother unplugged a telephone to keep her from using it. *Id.* The

mother testified that her daughter said, "I wish you were dead, I um, I could stab you right now" and then a minute later stated, "I thought about doing it while you were in your sleep." *Id.* at 535–36. In another case, the Oregon Court of Appeals held that "[b]ecause laser devices are used to sight weapons," the act of "shining a laser beam onto the forehead of an elderly couple" who were unaware of the beam could constitute menacing under § 163.190. *State v. Santacruz-Betancourt*, 969 P.2d 1040, 1043 (Or. Ct. App. 1998).

These cases demonstrate the breadth of the conduct criminalized under Oregon's menacing statute. The daughter's angry statements in *Dompeling* are exactly the kind of "emotional outburst" or "mere angry utterance[]" that *Latter-Singh* characterized as non-turpitudinous behavior because the victim need not experience sustained fear of immediate danger. *Latter-Singh*, 668 F.3d at 1162. And the laser-pointing activity in *Santacruz-Betancourt* is materially indistinguishable from the laser statute that we held was categorically not a crime involving moral turpitude in *Coquico*, 789 F.3d at 1054. Because "there is a 'realistic possibility' that [O.R.S. § 163.190] would be applied to non-turpitudionous conduct, there is no categorical match." *See Fugow*, 943 F.3d at 458 (quoting *Gonzales*, 549 U.S. at 193). We conclude that Flores-Vasquez's conviction under O.R.S. § 163.190 does not constitute a crime involving moral turpitude.[7]

_____

[7] Because we grant the petition and remand on cancellation of removal grounds, we need not reach the question whether the agency violated Flores-Vasquez's due process rights when denying his post-conclusion voluntary departure request. However, we note that on remand, the government is required to make a "good faith effort" to present a witness

Although, as the dissent notes, an agency may "alter[] its views from one reasonable interpretation to another," the BIA in *Matter of J-G-P-* announced no new rule. Instead, it stated that its analysis "comports with [the BIA's] case law and the controlling jurisprudence of the United State Court of Appeals for the Ninth Circuit" and discussed our decisions at length. *Matter of J-G-P-*, 27 I. & N. Dec. at 644, 648–50. And as we discussed above, the principles distilled from our prior precedent are derived in part from BIA case law which has long held that simple assault offenses involving only offensive touching or threatened offensive touching without injury are not crimes involving moral turpitude. *See In re Solon*, 24 I. & N. Dec. at 242; *Matter of Jing Wu*, 27 I. & N. Dec. at 10–11; *In re Sanudo*, 23 I. & N. Dec. 968, 972–973 (BIA 2006). Our dissenting colleague's reliance on *Betansos* is therefore inapt. There, we upheld the BIA's decision under *Chevron* as reasonable even as it directly contradicted our earlier ruling that indecent exposure is not a crime of moral turpitude. *See Betansos*, 928 F.3d at 1142. Here, in contrast, *Matter of J-G-P-* does not purport to reassess longstanding BIA and Ninth Circuit precedent concerning simple assault offenses, and because it misapplied that precedent, its conclusion is unreasonable. *See id*.

**PETITION FOR REVIEW GRANTED; REMANDED.**

---

before relying on the witness's affidavit. *Alcaraz-Enriquez v. Garland*, 19 F.4th 1224, 1231 (9th Cir. 2021); *see also Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009); *Saidane v. I.N.S.*, 129 F.3d 1063, 1065 (9th Cir. 1997).

BAKER, Judge, dissenting:

My colleagues read three of our decisions as standing for the proposition that "at least in the context of assault crimes, a [crime of moral turpitude] determination requires *both* an evil or malicious intent and the infliction of actual substantial harm on another." Opinion at 12 (emphasis in original); *see also id*. at 9–12 (citing *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159 (9th Cir. 2006); *Latter-Singh v. Holder*, 668 F.3d 1156 (9th Cir. 2012); and *Coquico v. Lynch*, 789 F.3d 1049 (9th Cir. 2015)). They then conclude that the Board of Immigration Appeals' contrary interpretation of the term "crime of moral turpitude" in *Matter of J-G-P-*, 27 I. & N. Dec. 642 (BIA 2019), is unreasonable because it conflicts with those decisions. Opinion at 12. Under settled Supreme Court and circuit precedent, however, we cannot replace the BIA's reasonable interpretation of this ambiguous term with our own.

As the majority acknowledges, *id.* at 5, we use a two-part test to determine whether a criminal statute categorically outlines a crime of moral turpitude:

> The first step is to identify the elements of the statute of conviction. The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition.

*Coquico*, 789 F.3d at 1051 (cleaned up) (quoting *Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc)). No one questions the elements of the offense for which Flores-Vasquez was convicted, "menacing constituting domestic

violence," ORS § 163.190, or that it encompasses conduct that does not create any actual substantial harm. The entire controversy therefore turns on whether the elements of this offense satisfy the definition of a "crime of moral turpitude."

While we review the BIA's construction of the statute de novo, *Coquico*, 789 F.3d at 1051, we must accord *Chevron* deference to the BIA in its determination of whether the elements of the crime constitute morally turpitudinous conduct when, as here, it relies on a precedential determination. *Latter-Singh*, 668 F.3d at 1160 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).[1] Although my colleagues profess this standard, *see* Opinion at 6 (citing *Reyes v. Garland*, 11 F.4th 985, 993 (9th Cir. 2021)), they fail to practice it.

*Chevron* demands that we ask two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If . . . the court determines Congress has not directly addressed the precise question at issue, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43.

---

[1] I acknowledge that *Chevron* may not be long for this jurisprudential world. *See Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023) (granting certiorari on the second question presented); *see also* S. Ct. No. 22-451, Pet. for Cert. at i (Nov. 10, 2022) (asking "[w]hether the Court should overrule *Chevron* . . . ."). Nevertheless, at least for now, *Chevron* is with us and binding.

As to *Chevron*'s first question, "[w]e have stated that the term 'moral turpitude' 'falls well short of clarity' and 'is perhaps the quintessential example of an ambiguous phrase.' " *Betansos v. Barr*, 928 F.3d 1133, 1139 (9th Cir. 2019) (quoting *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc)). Turning therefore to the second question, we must uphold the BIA's construction so long as it is not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

*Chevron* teaches—for better or worse—that agencies, not the courts, fill statutory gaps left by ambiguous language. *See id.* at 843–44. A prior judicial reading can trump an agency interpretation of a statute only if the former construed unambiguous terms which "leave[ ] no room for agency discretion." *Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). But where multiple plausible interpretations exist, we cannot allow a "judicial precedent to foreclose an agency from interpreting an ambiguous statute" because doing so "would allow a court's interpretation to override an agency's." *Id.*

Everyone agrees that the term "crime of moral turpitude" is ambiguous. No Ninth Circuit decision has held that it *unambiguously* requires an element involving "the infliction of actual substantial harm on another," Opinion at 12, nor could one. Therefore, we *must* defer to the BIA's decision in *J-G-P-* unless it is unreasonable on its own terms, even if we previously adopted a conflicting construction. *Brand X*, 545 U.S. at 981, 984–85 (upholding the FCC's subsequent construction of "telecommunications service" that disagreed with ours in *AT&T Corp. v. City of Portland*, 216 F.3d 871, 873 (9th Cir. 2000)).

This is the approach that we recently used in construing the term "crime of moral turpitude." In *Betansos*, an alien appealed an Immigration Judge's (IJ's) conclusion that he was ineligible for cancellation of removal. The IJ held, and the BIA affirmed, that his conviction for indecent exposure qualified as a crime of moral turpitude, relying on a published decision for that characterization. 928 F.3d at 1135–36 (citing *Matter of Cortes Medina*, 26 I. & N. Dec. 79, 79 (BIA 2013)). *Cortes Medina* directly contradicted our earlier ruling that indecent exposure is *not* a crime of moral turpitude. *See Nunez v. Holder*, 594 F.3d 1124, 1127 (9th Cir. 2010). Still, we upheld the BIA's decision as reasonable and declined to supplant the agency's interpretation with our own. *Betansos*, 928 F.3d at 1142 ("Reasonable minds can differ when deciding whether certain crimes are morally turpitudinous. Indeed, we did so in *Nunez*. However, pursuant to *Brand X*, we must defer to the BIA's decision in *Cortes Medina*.").

The majority does the exact opposite here. It distills principles from three earlier cases in which we applied our *own* definition of "crime of moral turpitude," granting limited to no deference to the BIA's views. *See Fernandez-Ruiz*, 468 F.3d at 1163 (applying de novo review to this question); *Latter-Singh*, 668 F.3d at 1160 (applying *Skidmore* deference to this question); *Coquico*, 789 F.3d at 1051 (also applying *Skidmore* deference). And insofar as these opinions do rely on the BIA's precedents, we cannot use our decisions to prevent the agency from altering its views from one reasonable interpretation to another. *Chevron*, 467 U.S. at 863 ("An initial agency interpretation is not instantly carved in stone.").

The majority improperly "allow[s] a judicial precedent to foreclose an agency from interpreting an ambiguous

statute." *Brand X*, 545 U.S. at 982. "This is directly at odds with our en banc court's recognition that the agency gets to tell us what ambiguous statutory terms like 'moral turpitude' mean, not the other way around." *Reyes*, 11 F.4th at 1004 (VanDyke, J., dissenting) (citing *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 523 (9th Cir. 2012) (en banc)). As far as I can tell, in *J-G-P-* the BIA provided a thorough analysis that reasonably applied its precedent to the elements of the Oregon menacing statute. We should therefore defer to the BIA's decision here applying *J-G-P-*. *Cf. Rivera v. Lynch*, 816 F.3d 1064, 1071 (9th Cir. 2016) (withholding deference because the BIA provided "no reasoning whatsoever"); *Uppal v. Holder*, 605 F.3d 712, 715 (9th Cir. 2010) ("Because the BIA failed to identify the elements of § 268 correctly, its CIMT analysis, in which it compares the elements it has identified to the generic definition of moral turpitude, is misdirected and so merits no deference from this Court.").

I would reach the same conclusion even if, instead of deferring to the agency, our task here were to ascertain whether *J-G-P-* is consistent with our precedent. In *J-G-P-* the BIA relied on *Latter-Singh* as support for the proposition that "evil or malicious *intent* is the essence of moral turpitude, which in our view, properly places the focus on a violator's intent to cause fear of serious physical injury, rather than on his victim's subjective fear, in assessing the reprehensibility of his actions." 27 I. & N. Dec. at 649 (cleaned up) (emphasis added) (citing *Latter-Singh*, 668 F.3d at 1161). *Latter-Singh* plainly focused on *intent* to cause fear, not on *actually causing* fear: "The *intent to instill great fear* of serious bodily injury or death in another constitutes the 'vicious motive or corrupt mind'

demonstrative of a crime involving moral turpitude." 668 F.3d at 1163 (emphasis added).

My reading of *Latter-Singh* differs from my colleagues' because I do not conclude that it hinged on the California statute's[2] requirement that the victim *actually fear* for his, or his immediate family's, safety—rather, my reading is that *intent* is dispositive. We referred, multiple times, to the importance of the perpetrator's intent to make the victim fear that the threat will be carried out. 668 F.3d at 1162 ("[T]he mens rea required by § 422 constitutes the evil intent required to render conduct morally turpitudinous."); *id.* ("[T]he intentional transmission of a threat to kill another or inflict physical injury against the victim is evidence of a vicious motive or a corrupt mind.") (cleaned up); *id.* at 1163 ("The intent to instill great fear or serious bodily injury or death in another constitutes the vicious motive or corrupt mind demonstrative of a crime involving moral turpitude. As such, we conclude that § 422 is categorically a crime involving moral turpitude.")[3] (cleaned up).

In this case, by comparison, the Oregon statute at issue criminalizes "intentionally *attempt[ing]* to place another person in fear of imminent serious physical injury." ORS § 163.190(1) (emphasis added). The statute on its face does not require success (i.e., it refers to "attempting" to cause fear, not actually causing fear), and as the state courts have noted, the victim's subjective state of mind is simply

---

[2] Cal. Penal Code § 422.

[3] I acknowledge that later in the opinion, we referred to the combination of "the intent and result of instilling sustained and imminent grave fear in another." *Id.* By that point, however, we had already concluded, without reference to the "result," that § 422 proscribed a crime of moral turpitude.

irrelevant—"it is only necessary that *a reasonable person* would have been placed in the requisite state of fear." *State v. Anderson*, 641 P.2d 40, 41 (Or. App. 1982) (emphasis added). The BIA's point in *J-G-P-* was that intending to place a reasonable person in fear of imminent serious injury inherently reflects the malicious intent needed for a crime of moral turpitude.

As to *Fernandez-Ruiz*, my colleagues correctly note that the Arizona simple assault statute at issue there did not require a willful or intentional act—recklessness was enough. Here, in contrast, the Oregon "menacing" statute requires intent: "A person commits the crime of menacing if by word or conduct he *intentionally attempts* to place another person in fear of *imminent serious physical injury*." ORS § 163.190(1) (emphasis added). The BIA emphasized in *J-G-P-* that its reasoning depended on the combination of the element of intent and the element of "imminent serious physical injury," with "serious physical injury" defined in another Oregon statute as meaning "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health[,] or protracted loss or impairment of the function of any bodily organ." 27 I. & N. Dec. at 644 (quoting ORS § 161.015(8)).

Compare that to the Arizona simple assault statute in *Fernandez-Ruiz*, which criminalized "recklessly causing *any physical injury* to another person" or "intentionally placing another person in reasonable apprehension of *imminent physical injury*." 468 F.3d at 1164 (emphasis added) (quoting ARS § 13-1203(A)(1)–(2)). "Imminent physical injury" is a fundamentally different matter from the sort of "serious physical injury" defined by the Oregon statute. In *J-G-P-* the BIA repeatedly emphasized the word "serious"

in "imminent serious physical injury" to distinguish the case from other simple assault statutes that did not involve crimes of moral turpitude and concluded, "[W]e consider the specific intent to cause fear of imminent serious injury to be quite different from a general intent to cause any apprehension or fear, however slight." 27 I. & N. Dec. at 650.

As to *Coquico*, we stated that "[o]ur precedent casts doubt on whether an intent to cause 'apprehension or fear,' rather than intent *to injure*, can ever be a" crime involving moral turpitude. 789 F.3d at 1054 n.4 (emphasis in original). That footnote also explained that where an underlying act is not "inherently grave, base, or depraved," causing fear of it cannot be considered "evil" for purposes of moral turpitude. *Id.*

In *J-G-P-* the Board specifically considered that footnote but found it to be both dicta and irreconcilable with *Latter-Singh*, "which concluded that a criminal threat can categorically involve moral turpitude." 27 I. & N. Dec. at 650. As noted above, *Latter-Singh* did indeed state that "[t]he intent to instill great fear of serious bodily injury or death in another constitutes the 'vicious motive or corrupt mind' demonstrative of a crime involving moral turpitude." 668 F.3d at 1163.

The BIA is correct in observing that the footnote in *Coquico* cannot necessarily be squared with our holding in *Latter-Singh* if both are considered essential holdings. My colleagues reject *J-G-P-* in light of those two decisions and *Fernandez-Ruiz*. For the reasons discussed above, I believe *J-G-P-* is consistent with—and therefore reasonable in view of—both *Fernandez-Ruiz* and *Latter-Singh*. As for *Coquico*, I believe the Board reasonably concluded that footnote 4 was

dicta. To the extent the footnote is accorded more weight, creating a possible conflict with *Latter-Singh*, I note that *Coquico* is dated June 2015, *Latter-Singh* is dated February 2012, and *Fernandez-Ruiz* is dated November 2006. Under those circumstances, it was reasonable for the BIA to adopt the rule announced in our two earlier opinions. If we were to address the issue in a context not requiring deference to an agency, the law of the circuit rule would dictate that we follow the earlier-issued opinion(s). *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). While the BIA did not discuss that principle, I cannot conclude that it would be unreasonable for it to follow the earlier opinion when we would do the same.

I respectfully dissent.